# Jas. H. Watkins, of N., *vs.* John N. Watkins.

By the 2nd sec. of the 9th art., and the 8th sec. of the 10th art., of the new constitution, the first of which provides, that " the Adjutant General shall be appointed by the governor, by and with the advice and consent of the senate," and shall hold his office for six years, and the last, that " the governor and all officers, civil and military, now holding commissions under this State, shall continue to hold and exercise their offices according to their present tenure, until they shall be superseded pursuant to the provisions of this constitution, and until their successors be duly qualified," the incumbent of the office of Adjutant General under the old constitution holds under his commission until he is superseded by the *concurrent action of the governor and senate*, or shall resign, or shall be removed by death, or in pursuance of the sentence of a court martial.

The appellee was the Adjutant General at the time of the adoption of the new constitution, and at the first session of the senate thereafter the governor nominated the appellant for the office. The senate, for certain reasons stated by them, refused either to confirm or reject the nomination, and after the adjournment of the senate, the governor issued a commission to the appellant as Adjutant General. HELD, that the 12th sec. of the 2nd article of the new constitution, did not confer on the executive the power to issue this commission.

That section only authorises the governor to fill *vacancies*, and the senate not having concurred with the governor in the appointment of an Adjutant General, the appellee continued to hold under his commission, and was filling the office when the commission issued to the appellant.

In the event of the resignation, death or removal of the Adjutant General during the recess of the senate, the governor would have the right to issue a temporary commission, because, in that case, there would be a *vacancy* which he would be authorised to fill.

Under the distribution of the powers of government in this State, it is not given to the judiciary *to compel* action on the part of a co-ordinate branch of the government; its authority in this respect is confined to *restraining* the potency of legislative enactments when they transcend constitutional limits.

APPEAL from the circuit court for Anne Arundel county.

The appellant filed his petition in the circuit court for Anne Arundel county, at the October term 1852, stating, that by virtue of art. 2, sec. 11, and art. 9, sec. 2, of the new constitution of this State, the governor, during the last session of the legislature, nominated the petitioner to the senate as Adju-

tant General; that the senate passed resolutions in reference to said nomination, (copies of which are filed with the petition,) and took no further action in the premises; that since the adjournment of the legislature, petitioner has received from the governor a commission as Adjutant General, (which is also filed with the petition,) by virtue of which, having duly qualified, he claims to be the Adjutant General of the Maryland Militia, and as such, entitled to the custody of the books, records and archives of the office of Adjutant General, and all other matters and things appertaining to said office. The petition then further states, that the appellee claiming to be Adjutant General, by virtue of a commission granted to him many years ago, before the adoption of the new constitution of Maryland, still holds all the books, papers, records and archives, and all other matters and things appertaining to said office, and refuses to deliver the same to your petitioner, or in any way to recognise the claim of petitioner to said office, as appears by a correspondence filed with the petition. The petition then prays, that a rule may be forthwith laid upon the appellee, requiring him at an early day to show cause why a writ of *mandamus* shall not issue, commanding him to surrender into the hands of the petitioner all the books, papers, records and archives, and all other matters and things appertaining to the office of Adjutant General of the Maryland Militia, and that upon the return of said rule a writ of *mandamus* may issue as aforesaid.

With this petition was filed:—1st. The following resolutions of the senate of Maryland, passed in executive session on the 31st of May 1852: "Resolved, that in the opinion of the senate, the Adjutant General of the State holds his office by the same tenure as before the adoption of the present constitution, until his successor be duly appointed and qualified; that this tenure being for life, there is nothing in the constitution which expressly or by implication fixes the time for the appointment of the successor of the present incumbent; that it was not designed to submit the period thereof to the dis-

cretion of the executive, and can therefore only be provided for by legislative action."

"Resolved, that inasmuch as no provision on this subject has been made by law, that the nomination for Adjutant General made by the governor, cannot be considered or acted on by the senate, and that the secretary of the senate communicate these resolutions to the governor."

2nd. A commission to the appellant as Adjutant General, granted in due form by the governor, on the 31st of July 1852. 3rd. A written correspondence, showing a demand by the appellant, and a refusal by the appellee, to deliver up the records, &c., of the said office.

The court, on the 26th of October 1852, upon this petition ruled the appellee to show cause against the prayer thereof on the 5th of November following, provided a copy thereof be served on him on or before the 19th of October inst., in obedience to which the appellee filed his answer, averring, as cause why the writ of *mandamus* should not issue as prayed, that the petitioner has not been duly appointed Adjutant General, according to the constitution and form of government of the State, and hath not qualified himself to perform the duties of said office in manner and form as required by said constitution; that before the adoption of the present constitution, and at the time of the adoption thereof, and since that time, respondent was and still is Adjutant General of the State, duly constituted, appointed, commissioned and qualified to act as such, and was and still is in the possession and incumbency of the said office, and of the records, papers and archives belonging thereto, and discharging faithfully and diligently the duties appertaining to said office, and receiving and enjoying the salaries and emoluments attached thereto; wherefore, and because he hath not been superseded pursuant to the provisions of the said constitution, he is advised and insists that he is of right Adjutant General as aforesaid, and entitled to the possession of said office, with its records, papers and archives, and to the receipt and enjoyment of the salaries and emoluments thereof. That according to the ten-

ure of the office of Adjutant General existing at the time of the adoption of the said constitution, the Adjutant General was liable to be removed or suspended by the governor, in pursuance of the judgment of a court martial, and for no other cause, and on no other pretext; and respondent avers, that he hath not been sentenced, convicted or tried by any court martial, nor removed nor suspended by the governor, in pursuance or under color of any judgment of a court martial. That by the said constitution it is provided, that the Adjutant General shall be appointed by the governor, by and with the advice and consent of the senate, and protesting that he cannot in any wise be superseded except for cause as aforesaid, respondent denies that the petitioner hath been appointed to said office by the governer, by and with the advice and consent of the senate.   On the contrary it is shown by said petition, that the petitioner only pretends title under color of appointment made by the governor during the recess of the senate, and that during the session of the senate last preceding, the governor had nominated to the senate the said petitioner for said office, and that the senate during said session refused to advise and consent to the appointment of said petitioner to said office.   Therefore, and for other reasons apparent on the face of said petition, respondent denies the right of the petitioner to a writ of *mandamus* as prayed.

Upon this petition and answer, and after argument of counsel on both sides, the court, (Brewer, J.,) passed an order refusing the writ, from which order the appellant appealed.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J.

*Robert J. Brent* for the appellant.

The two grounds of defence taken by the respondent are:

First, that he cannot be removed at all, except by judgment of a court martial.

Secondly, that the petitioner was not legally commissioned, because commissioned by the governor in the recess of the

senate, especially after the senate had declined to confirm his previous nomination, *as shown in the petition.*

As to the first ground it is true that the old constitution, art. 48, did, while it was in force, thus protect *all militia officers* from arbitrary removal, but when that constitution was abrogated and destroyed, it could no more bind a posthumous support to the old Adjutant General, than it could to the old judges who were *removable only for cause and by impeachment.*

There are no words in the new constitution, abolishing the old courts or judges, or other civil officers, and yet they are all gone under the sweeping declaration, that on and after the 4th July 1851, the new constitution shall supersede the old constitution. See last article of new constitution. We therefore hold, that the old Adjutant General, can only be retained in office by virtue of some clause in the new constitution; but before examining critically this last instrument, we will show the nature and tenure of the Adjutant General's office, as organised under the old constitution.

The act of 1834, ch. 251, sec. 58, repealed all former militia laws. Section 4 of same act, declares, that "there shall be commissioned one Adjutant General in the militia of the State." The old constitution, title *"Governor, sec. 14,"* (1 *Dorsey's Laws,* 38,) authorises "the Governor to commission all officers." Article 48 of old constitution, prevents "the removal of all militia officers, except in pursuance of the judgment of a court martial." The effect of these provisions is, therefore, under the old constitution, to make the Adjutant General *a life officer, removable only by sentence of a court martial.* But we have before shown that this entire constitution was abolished on the 4*th July* 1851, and nothing in its provisions can now be relied on, except so far as incorporated into, and sanctioned by the new constitution itself. The new constitution art. 10, sec. 8, expressly continues "all officers on *their old tenure,* until superseded by the *qualification of their successors, pursuant* to the terms of the new constitution." But the old officers were thus kept in office, not by

44     v.2

virtue of the old, but by the authority of the new constitution, which *while continuing them as a matter of grace temporarily,* places a *limit to their* tenure, viz : until their successors qualify under the terms of the new constitution. The new constitution merely refers to *the former tenure of these old officers,* as a rule by which their powers, duties and rights, may be measured while they continue in office. The old tenure is not referred to to show, that the old officers are to be removed in *the same way* as provided in the old and exploded form of government, *because the same clause* which thus refers to the *old tenure,* goes on expressly to say, that this old tenure shall last "*until* the successors of these old officers shall qualify under the new constitution." The very moment there is a lawfully appointed and duly qualified successor *in esse,* competent to discharge the duties of Adjutant General, *eo instanti,* the old incumbent *is superseded* by the clear language of the new constitution.

2nd. Is the petitioner duly commissioned and entitled to act as Adjutant General, pursuant to the terms of the new constitution? If so, there is an end of the controversy.

The new constitution, art. 9, sec. 2, provides that, "the *Adjutant General shall be appointed by the governor, by and with the advice and consent* of the senate. *He shall hold his office for six years, and receive the same salary as heretofore, until changed by the legislature.*"

Does not that clause *create* under the new constitution an office of Adjutant General, to *be filled as* therein directed? If you strike out this clause, it is true you have the old Adjutant General by virtue of the *continuando clause,* until his successor is appointed, but in case of his death, there would be no Adjutant General authorised in the new constitution. Hence the necessity of that clause, *creating in* the formation of the new government, this office, *to be filled by the governor,* with the advice, &c., of the senate. If that clause had not, in any respect, altered or departed from the old tenure of the Adjutant General's office, we would still insist, that the simple creation of the office, would require it to be filled ;

Watkins vs. Watkins.

and that the newly created constitutional office, could not be considered as filled, by virtue of the old Adjutant General being *provisionally* continued, (to prevent an *interregnum,)* until his successor is appointed; because, the old Adjutant General could not be considered as filling the newly created office, *unless appointed by the governor, with* the advice of *the senate,* after the adoption of the new constitution.

But the argument is made irresistible, when we consider that the new constitution has *actually prescribed a new tenure of six years, for the new office of Adjutant General.* Surely this clause cannot be said to be gratified, by merely suffering the old Adjutant General to remain in office, *on his former tenure, until superseded.* If not superseded by the appointment of a successor, then the old Adjutant remains, not for six years but for life, if he cannot be displaced by a successor, for that is the only mode of displacing him by art. 10, sec. 8.

Now the senate resolutions erroneously assume, that because there is in the new constitution *nothing which fixes the time for the appointment* of the successor of the present incumbent, "the time cannot be fixed by the discretion of the executive, but must be fixed alone by legislation." A more unsound or illogical conclusion, was never made from such simple premises. If this be sound law, then, as there was no time prescribed by the new constitution for the appointment of the clerk of this court, and as the old clerk was equally continued over by art. 10, sec. 8, it follows, that this court had no discretion to fix the time of appointment, and it required a legislative act. This court certainly thought differently, when they proceeded at once to appoint Mr. Gill as the clerk of the new court. Nay, if it be sound law, it is questionable if there be now a legally qualified judge in the whole State, because the constitution *fixed no time* for the qualification of the judges, *and ipso facto, the superseding* of the old judiciary; and it could not design to leave the time to the discretion of so many judges. But this is all legislative blundering—another proof to the many already existing, of the necessity of a separate judiciary department to construe the laws of the land.

Why may not the governor fix the time by issuing his commission for six years to an Adjutant General appointed under the new constitution? Is there any necessity for a legislative act where the governor does not fail to exercise his power? It is not necessary to consider whether the legislature might not fix the time of appointment, though we should hardly admit that they could fix it beyond a reasonable time after the adoption of the new constitution, which contemplates in the absence of a specific time, that the governor will discharge his duty in a reasonable time. If the legislature were to fix the time twenty years hence, would that be a constitutional act, which nullified the great design of the constitution, to have Adjutant Generals for a short term of years? Could legislation extend the old Adjutant's *term to twenty years, in spite of the governor and the constitution?* We therefore hold, that as the new constitution has imposed this duty on the governor, without any limitation of time for its performance, he is not to be trammelled in his action, or hindered and delayed by a legislature which has nothing to do with the office whatever, except so far *as one of its branches* may be called on to advise and approve the nomination when made.

But we contend, that the constitution has substantially fixed a period for the appointment of Adjutant General, when it declares, that the governor shall, within fifty days, send in all nominations to the senate. See art. 2, sec. 14. And under this clause the governor was bound to nominate an Adjutant General within thirty days after the meeting of the *legislature in* 1852. The senate, therefore, egregiously err, when they assume that the legislature must fix the time for the appointment of an Adjutant General, and that so long as they choose to withhold such a law the whole power of the governor is to remain dormant, and the constitutional office of Adjutant General, as *therein established,* is to remain vacant and unfilled. It is therefore clear, that the power to appoint an Adjutant General is vested in the governor, under the constitution, without limitation or restriction, except that the senate must confirm it to be effectual; that is, to fill the office for the term of six years.

If the governor had no other power in reference to this office, except that conferred by art. 9, sec. 2, the petitioner could not claim the office, "unless *appointed by the governor,* with the advice and consent of the senate." But we will show that under another clause in the constitution, the governor has the power in the recess of the senate, to fill all *vacant* offices, by granting temporary commissions; and we contend, that according to the true intent and meaning of the *term* "*vacancy*," the office of Adjutant General, as established and provided in the new constitution, *remained vacant,* notwithstanding the old Adjutant General was continued as "*locum tenens*" on his *old tenure,* but not as in any respect filling the *new office* now created, and which *could only be filled by an appointment or new act of filling it, after the adoption of the new constitution.* Art. 2, sec. 12, provides, that in case of *any vacancy* which the *governor has power to fill,* he may, in the recess of the senate, grant temporary commissions. But it is objected: First, that here was no vacancy to fill, as there was an Adjutant General, and therefore no occasion to fill it during the recess. The objection is more specious than solid. Could the respondent be considered as filling the office of Adjutant General as ordained in the new constitution? Had he been appointed by the governor and senate? No. Was he in for six years as required by the new constitution? No. He was only in at sufferance, *until the office as created* should be filled, permanently or temporarily, pursuant to the terms of the new constitution; but he was not *in that office,* because that office remains vacant until it shall be filled by an appointment, made *under and after* the new constitution went into into effect. He is but authorised temporarily and provisionally, to act as Adjutant General as he had done before, until the newly created office should be filled, and until that is done the office is vacant. In other words, the appellee did not hold under the clause creating the new office of Adjutant General, art. 9, sec. 2, but he held alone by virtue of art. 10, sec. 8, which, to prevent an *interregnum* in the government, continues all the old officers *until the offices created by the consti-*

*tution* are filled, pursuant to the terms of that instrument; in the meantime the constitutional office *is vacant, not being filled,* Or to speak more practically, the respondent by merely holding over at sufferance, could not be said to *fill* an *office* which required a new appointment for a new tenure, and removable only after appointment, *in pursuance of the* judgment of a court martial. See art. 2, sec. 15. The respondent, therefore, has never filled the office of Adjutant General, as established and created in the new constitution.

1. Because he has not been appointed thereto by the present governor.

2. Because he does not hold the office for the tenure therein prescribed of six years, but only temporarily until superseded by the vacant office being filled. And to illustrate this, we see that it is not necessary to *remove the* respondent, but merely to fill the vacant office by appointing a constitutional Adjutant General. The case stands precisely as if the new constitution had said, that the secretary of State should discharge the duties of Adjutant General and assume the title until an Adjutant General should be appointed as directed in the constitution. In such case the office would be vacant until an appointment.

3. Because the respondent is superseded by the simple appointment of his succcessor, whereas, the Adjutant General, *authorised* by the new constitution, is only *removable* by sentence of a court martial. See art. 2, sec. 15.

We therefore assume, that this office, *as created* in art. 9, sec. 2, remained *vacánt.* It is true the governor had attempted to fill it by nominating the petitioner to the senate, but by that body having failed to reject or confirm, there was no appointment when it adjourned, and the office remained vacant as when it met.

Now art. 2, sec. 12, not only requires the office to be "vacant," but it must be a vacancy which the governor "has power to fill." This clearly means to confer, *in vacation,* on the governor, the power, *temporarily,* to appoint to offices, which he had power *to fill permanently,* by and with the ad-

vice and consent of the senate. If it does not mean this, it means nothing, for if it relates to *vacancies* which the governor has *power to fill* without the concurrence of the senate, then why grant to him a power which on the face of the grant is limited by the declaration, that the grantee shall have no other power than he possessed before? Such an absurdity cannot be supposed; but it will be seen by reference to the article creating the Adjutant General's office, (art. 9, sec. 2,) that the Governor *is to appoint him*. It is true, it is to be with the consent of the senate, that is, they may reject and veto, but when the appointment is made, the commission and authority are from the governor, who alone has the *appointing or filling* power, *sub modo*. The senate cannot appoint or fill, all that they can do is to confirm or reject. And so it is with every other officer, not one of whom can be permanently appointed, except by the governor with the assent of the senate. Art. 2, sec. 11. Therefore the office of Adjutant General, *if vacant*, is one which, in the recess of the senate, the governor may fill *protanto*, by a temporary commission.

It is also objected, that the vacancy must occur after the adjournment of the legislature. But on looking to a much more stringent clause in the federal constitution, which ties the president down "to vacancies which happen" in the recess of the senate, (see U. S. Constitution, art. 2, sec. 2,) it will be seen, that the power to fill vacancies in the recess of the senate, is *not confined* to vacancies *occurring* after the adjournment of the senate, but has always been broadly construed as *vesting*, *in the recess* of the senate, a power in the president *singly* to appoint, *commensurate* with the power of the president concurrently with the senate, except only that his commission is temporary, until the end of the next session of the senate. This construction has been constantly maintained by the ablest opinions of attorney generals, and practice of the federal executive; and it stands on the firm foundation, that the publi cinterest requires all offices to be filled which are found to be vacant at the adjournment of the

senate, as well as those which become vacant thereafter. See 1 *Vol., Opinions of Attorney Generals,* 675. 2 *Vol., do.,* 884.

We therefore conclude that the senate are mistaken:

Frst, in declaring that the respondent holds under the new constitution for life, until the legislature shall authorise the governor to Appoint an Adjutant General, whereas the new constitution expressly limits the tenure of the respondent to the time when his successor shall be appointed and qualified, pursuant to the terms of that instrument.

Secondly, in supposing that the governor could not fix the period for appointing the Adjutant General.

We also maintain, that the commission granted to the petitioner in the recess of the senate was legal and proper, and is yet in force, and by virtue thereof, the petitioner is the only lawful Adjutant General, and as such entitled to the writ of *mandamus* as prayed; and in maintaining this proposition, we deny that the action, or rather the non-action of the senate on the nomination of petitioner is any cause why the governor should not commission him during the recess of the senate.

In conclusion, we insist, that a *mandamus* is the only proper remedy in a case like this. Its distinguishing charateristic is, that it always lies where there is no other adequate specific remedy. *Equitable* remedies will not prevent the writ of *mandamus. People vs. Mayor,* 10 *Wendell,* 303. That it is peculiarly appropriate in this case. See 3 *Mass. Rep.,* 287. 2 *Pickering,* 397. 21 *do.,* 148. *Marbury vs. Madison,* 1 *Cranch. Kendall vs. Stokes,* 12 *Peters.* 1 *Wendell,* 318. 12 *Johns.,* 414. 5 *Pick.,* 323. It also lies to swear in church wardens duly elected. *Rex vs. Statford,* 5 *Mod.,* 318. *Rex vs. Henchman,* 5 *Mod.,* 325. 7 *East,* 573. *T. Raymond,* 431. 4 *Burrows,* 1999. 2 *T. Rep.,* 177.

*Alexander* for the appellee insisted that the order should be affirmed for the following reason:

That during the recess of the senate the governor's power of appointment is limited to the filling of vacancies oc-

curring in the recess, and that at the time of the appointment of the appellant by the governor there was no vacancy in the office of Adjutant General to be filled by his appointment. *New Constitution, Art.* 2, *secs.* 11, 12, 13, 15. *Art.* 9, *sec.* 2. *Art.* 10, *sec.* 8. *Old Const., title Governor, Art.* 48. *Sec.* 14 *of same title.* 1834, *ch.* 251, *Secs.* 4 *and* 58. *Art.* 3 *Dec. of Rights.*

LE GRAND, C. J., delivered the opinion of the court.

This cause comes before us on appeal from an order passed by the circuit court of Anne Arundel county, refusing to direct the issue of a writ of *mandamus,* requiring the appellee to surrender and deliver into the possession of the appellant all the books, papers, records and archives, and all other matters and things appertaining to the office of the Adjutant General of the Maryland Militia.

The appellee was Adjutant General, duly commissioned and qualified under the late constitution of the State, and, as such, continued to act up to the 21st day of July 1852. During the session of the senate, the executive nominated the appellant for the office of Adjutant General, but the senate refused either to confirm or reject the nominee, on the ground, that the appellee, as the then Adjutant General, held his office by the same tenure as before the adoption of the present constitution, until his successor should be appointed and duly qualified; and that this tenure being for life, there was nothing in the constitution which expressly or by implication fixed the time for the appointment of his successor, and that it was not designed to submit the period thereof to the discretion of the executive, and could only therefore, as alleged by the senate, be provided for by the legislature.

After the adjournment of the senate, the governor issued a commission to the appellant. The appellee refusing to surrender the papers, &c., belonging to the office into his custody, he filed his petition, asking that he be required to show cause why a *mandamus* should not issue commanding him to

45     v.2

make the delivery. On the hearing of the matter, the circuit court refused to direct the issue of the writ.

On this state of facts, this court is called upon to determine upon the correctness of the action of the court below.

Under the old constitution the Adjutant General held his office during good behavior.

By the second section of the ninth article of the present constitution it is provided, "the Adjutant General shall be appointed by the governor, by and with the advice and consent of the senate;" and that "he shall hold his office for the term of six years, and receive the same salary as heretofore, until changed by the legislature."

The eleventh section of the second article of the same instrument declares, the governor "shall nominate, and by and with the advice and consent of the senate, appoint all civil and military officers of the State, whose appointment or election is not otherwise herein provided for, unless a different mode of appointment be prescribed by the law creating the office." And by the twelfth section of the same article it is made the duty of the governor, in case of any vacancy during the recess of the senate, in any office which he has power to fill, to appoint some suitable person to said office whose commission shall continue in force to the end of the next session of the legislature, or till some other person is appointed to the same office, which ever shall first occur, &c.

Under these clauses of the constitution it is contended on behalf of the appellant, that he is rightfully in office, and being so, entitled to all matters pertaining to it.

In this view we do not concur. The eighth section of the tenth article of the constitution declares, that "the governor and all officers, civil and *military*, now holding commissions under this State, shall continue to hold and exercise their offices, according to their present tenure, until they shall be superseded, pursuant to the provisions of this constitution, and until their successors be duly qualified."

The appellee, at the adoption of the constitution, held a military commission under this State, and by force of the sec-

Watkins vs. Watkins.

tion last quoted he was to continue to hold it until he should be superseded, *pursuant to the provisions of the constitution,* and his successor should be duly qualified.

The question then is, how could the appellee be superseded *pursuant to the provisions of the constitution?*

This question is answered by the second section of the ninth article, which provides, that the Adjutant General shall be appointed by the governor, by and with the *advice* and *consent* of the *senate.* It requires a concurrence of action on the part of the executive and senate, and, in our judgment, until this takes place the incumbent under the old constitution holds under his commission.

It is clear to our minds, that it was the intention of the framers of the constitution to abolish the life tenure, by which most of the offices under the constitution and laws of this State may heretofore have been held, and in the particular case of the Adjutant General to limit his term of service to the period of six years. But it is equally plain to our minds, that the person who held the office when the new constitution went into operation, continues to hold it until such time as he be superseded by the concurrent action of the governor and senate, or shall resign, or shall be removed by death, or in pursuance of the sentence of a court martial, as is provided in the fifteenth section of the second article of the constitution.

We do not consider the twelfth section of the second article as conferring on the executive the power to issue the commission to the appellant. That section only authorises him to fill *vacancies,* and if none existed in the case now before us, that section did not apply to it. Our opinion is, that until the governor and senate concurred in the appointment of an Adjutant General, the appellee held under his commission, and as no such concurrence has been had, he still continues to do so.

We do not wish to be understood as saying, that under no circumstances could the governor issue a commission to a person as Adjutant General without the concurrence of the senate. In the event of resignation, death or removal of the

officer during the recess of the senate, we are of opinion the governor would have the right to issue a temporary commission, because in that case there would be a *vacancy* which he would be authorised to fill, but as the case is presented to us, we are of opinion the office was filled at the time the commission issued to the appellant.

In regard to that part of the argument of the learned counsel for the appellant which was based on the supposititious case, that if the foregoing reasoning be correct, the senate might defeat both the spirit and letter of the constitution by a failure to obey its injunctions, we have only to observe, that in all human contrivances confidence must be reposed somewhere, and that under the distribution of the powers of government in our State, it is not given to the judiciary to *compel* action on the part of a co-ordinate branch of the government. Its authority is confined to *restraining* the potency of its enactments when they transcend constitutional limits.

We see no error in the decision of the circuit court, and therefore affirm its order.

*Order affirmed.*