ANDREW J. SMOOT *vs.* ALEXANDER SOMERVILLE.

*Construction of sections 11, 13 and 14 of Article 2 of the Consti-*
*tution, as touching the power of the Governor to appoint a*
*Tobacco Inspector.*

The thirteenth section of Article two of the Constitution provides, that,
"All civil officers, appointed by the Governor and Senate, shall be
nominated to the Senate within fifty days from the commencement
of each regular session of the Legislature ; and their term of office,
except in cases otherwise provided for in this Constitution, shall
commence on the first Monday of May next ensuing their appoint-
ment, and continue for two years, (unless removed from office,) and
until their successors respectively qualify according to law ; but
the term of office of the Inspectors of Tobacco shall commence on
the first Monday of March next ensuing their appointment.'' The
*eleventh section* of the same *Article* provides, that, " In case of any
vacancy during the recess of the Senate, in any office which the
Governor has power to fill, he shall appoint some suitable person to
said office, whose commission shall continue in force until the end
of the next session of the Legislature, or until some other person
is appointed to the same office, whichever shall first occur; and the
nomination of the person thus appointed during the recess, or, of
·some other person in his place, shall be made to the Senate within
thirty days after the next meeting of the Legislature." By the four-
teenth section it is provided that, " If a vacancy shall occur, during
the session of the Senate, in any office which the Governor and Senate
have the power to fill, the Governor shall nominate to the Senate
before its final adjournment, a proper person to fill said vacancy,
unless such vacancy occurs within ten days before said final .ad-
journment." In the month of January, 1880, A. S. was nominated
by the Governor to the office of Inspector of Tobacco, Warehouse
No. 2, and after confirmation by the Senate at a regular session of
the Legislature, and duly qualifying, he on the 8th of April, 1880,
entered upon the discharge of the duties of the office. In Febru-
ary, 1882, the Governor nominated to the Senate, as Inspector of
Tobacco, Warehouse No. 2, a person whose nomination was rejected,
and on the 3rd day of April, 1882, which was the day on which
the Legislature adjourned *sine die*, the Governor nominated A. J. S.

to said office, but the Senate finally adjourned without acting on said nomination. After the final adjournment of the Legislature and while A. S. was still in possession of said office and discharging its duties, the Governor appointed A. J. S. to said office and issued to him a commission therefor. HELD:

1st. That no vacancy existed in said office from the first Monday in March, on which day the Constitution provides that the term of office of Inspectors of Tobacco shall commence, down to the time of the adjournment of the Legislature, nor did its final adjournment without any action by the Senate on the nomination of A. J. S., cause a vacancy which had not occurred before.

2nd. That there was no vacancy in the office which the Governor was authorized by the Constitution to fill during the recess of the Senate, and consequently the appointment of A. J. S. was void and of no effect, and A. S. was entitled to hold the office until his successor should be appointed and qualified in accordance with the directions of the thirteenth section of the second Article of the Constitution.

APPEAL from the Baltimore City Court.

This was an application by the appellant for a mandamus to require the appellee to deliver to the petitioner possession of the office of Inspector of tobacco for Warehouse number two in the City of Baltimore, together with the said warehouse, and all the tobacco, books, furniture and appurtenances of every kind whatever, pertaining to the same. The commission under which the appellant claimed was the following:

THE STATE OF MARYLAND,

To Dr. Andrew Jackson Smoot,

of Charles County, Esquire, greeting:

Be it known, that reposing especial trust and confidence in your judgment and integrity, by and with the advice and consent of the Senate, you are hereby appointed Tobacco Inspector, at Warehouse No. 2, in Baltimore City, *vice* Alexander Somerville, whose term has expired, to hold the said office for the term of two years, from the first

Smoot *vs.* Somerville.

Monday of March, 1882, or until you shall be duly discharged therefrom, and to execute the duties thereof with diligence and fidelity, and without favor, affection or partiality, according to law.

Given under my hand, and the Great Seal of the State of Maryland, at the City of (Seal's Place.) Annapolis, on this tenth day of April, in the year of our Lord eighteen hundred and eighty-two.

WILLIAM T. HAMILTON.

By the Governor,

JAMES T. BRISCOE,
Secretary of State.

The answer filed by the appellee was demurred to by the appellant, and by agreement a *pro forma* order was passed overruling the demurrer, and refusing the mandamus.

From this order the present appeal was taken. The facts involved are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STONE, GRASON, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*David S. Briscoe,* and *Bradley T. Johnson,* for the appellant.

*Joseph A. Wilson,* and *Albert Ritchie,* for the appellee.

GRASON, J., delivered the opinion of the Court.

The determination of the questions, presented on this appeal, depends upon the construction of the eleventh, thirteenth and fourteenth sections of the second Article of the Constitution of this State. The thirteenth section provides that "All civil officers appointed by the Governor and Senate, shall be nominated to the Senate within fifty

days from the commencement of each regular session of the Legislature; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appoint-, ment, and continue for two years (unless removed from office,) and until their successors, respectively, qualify according to law; but the term of office of the Inspectors of Tobacco shall commence on the first Monday of March next ensuing their appointment."

The eleventh section provides that, "In case of any vacancy, during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session of the Legislature, or until some other person is appointed to the same office, whichever shall first occur; and the nomination of the person, thus appointed during the recess, or some other person in his place, shall be made to the Senate within thirty days after the next meeting of the Legislature."

By the fourteenth section it is provided that "If a vacancy shall occur, during the session of the Senate, in any office which the Governor and Senate have the power to fill, the Governor shall nominate to the Senate, before its final adjournment, a proper person to fill said vacancy, unless such vacancy occurs within ten days before said final adjournment."

The thirteenth section, above quoted, is exactly similar to the fourteenth section of the Constitution of 1851, and to the sixteenth section of the Constitution of 1864, except with respect to the *time* at which the term of office of Inspectors of Tobacco is to commence.

From the language employed in these sections it is manifest that the power of appointment to all civil offices was intended to be, and was, confided, not to the Governor alone, but to the *Governor and Senate,* and that the Gov-

ernor has no power to appoint to office, without the advice and consent of the Senate, except to fill vacancies in offices, which may occur during the recess of the Senate, or, as provided by the fourteenth section, within ten days before its final adjournment. It has been contended that, inasmuch as the term of office of tobacco inspectors commences on the first Monday in March and is to continue two years, a vacancy occurs immediately upon the expiration of the term of two years; and such would be the case were it not for the further provision of the thirteenth section by which all officers are to continue in office *until their successors, respectively, qualify according to law."* It is true that the Governor may appoint, by and with the advice and consent of the Senate, at a regular session of the Legislature, a successor to an incumbent in office, and the successor, so appointed, would be entitled to take possession, and enter upon the discharge of the duties of the office, immediately upon the expiration of the term of two years of his predecessor, and in such case there would be no vacancy. But even if no appointment be made by the Governor and Senate, the thirteenth section still guards against a vacancy, by providing that the incumbent shall remain in office until his successor "shall qualify according to law," which cannot be, until one shall have been appointed in accordance with the requirements of the thirteenth section; that is, by the appointment of the Governor, by and with the advice and consent of the Senate. If a successor be not so appointed, the incumbent will continue in office, not as a mere *de facto* officer, but as an officer *de jure* by the express language of the thirteenth section. These views have been sanctioned by this Court in the cases of *Watkins vs. Watkins,* 2 *Md.,* 341, and *Marshall vs. Harwood,* 5 *Md.,* 433. The same construction has been given to similar provisions in the Constitutions and laws of other States of the Union. See *State vs. House,* 25 *Ohio,* 588; *Tappan vs. Gray,* 9 *Paige,* 507; *Common-*

*wealth vs. Hanley,* 9 *Pa.,* 513; *Brady vs. Howe,* 50 *Miss.,* 607; *People vs. Bissell,* 49 *Cal.,* 407; *State vs. Lusk,* 18 *Mo.,* 333; *Walker, et al. vs. Ferrill,* 58 *Georgia,* 516, 517, 518. In the convention of 1851, while a section, from which section thirteen of the present Constitution seems to have been copied, was the subject of discussion, the chairman of the committee on the Executive Department stated that the provision of that section, by which incumbents were to continue in office until their successors should be qualified according to law, was inserted for the purpose of preventing detriment to the public interests from interregnums, whether arising from the refractory temper of the Governor, or the Senate, or both. 1 *vol. Debates,* 468. The convention which framed the present Constitution seems to have been unwilling to confer the power of appointment to office upon the Governor alone, excepting cases of absolute necessity, by confining such power to filling vacancies, which might occur either during the recess of the Senate, or within ten days before its final adjournment, and even in such cases, he is required to nominate to the Senate, within thirty days after the meeting of the next Legislature, the person so appointed, or some other person, for the office; and the commission of the person appointed to fill the vacancy, is limited to the end of the next session of the Legislature after said appointment, or to the time of the appointment and qualification of the person appointed by the Governor and confirmed by the Senate, whichever may first occur; so that in no event can the person appointed to fill a vacancy, hold his commission and perform the duties for any longer time than the session of the Legislature, which meets next after his appointment, while it is evidently the intention of the Constitution that he shall remain in office as short a time as possible, consistently with the convenience of the Governor and Senate, by requiring his nomination or that of some other person to be made to the Senate in thirty days after the meeting of the Legislature.

The power and authority of the Governor alone to make appointments, being limited to the filling of vacancies occuring during the recess of the Senate, or within ten days before the final adjournment of the Legislature, it becomes necessary to look at the facts of the case now before us, for the purpose of ascertaining whether the appointment of the appellant to the office of Inspector of Tobacco was a constitutional exercise of power by the Governor.

The answer of the appellee to the petition filed against him having been demurred to, all the material facts stated in it are to be considered as admitted to be true. Looking at the answer then, we find that, in January, 1880, the appellee was nominated by the Governor to the office of Inspector of Tobacco at warehouse No. 2, and was confirmed by the Senate at a regular session of the Legislature, and received his commission, gave bond as required by law, which was filed for record in the clerk's office of the Superior Court of Baltimore City, and that, on the 8th day of April, 1880, he took and subscribed the oath required by the Constitution and laws of this State as such Inspector, and took possession of said office and entered upon the discharge of its duties, and has ever since so continued, and now is in possession of said office and discharging its duties. That in February, 1882, the Governor nominated to the Senate as Inspector of Tobacco at warehouse No. 2, G. W. Jones, and that on the 22nd day of March, 1882, said nomination was rejected by the Senate, and that, on the third day of April, 1882, which was the day on which the Legislature adjourned *sine die*, the Governor nominated to the said office, Andrew J. Smoot, the appellant, and that the Senate finally adjourned that day without having taken any action on said nomination. That, after the final adjournment of the Legislature, the Governor, while the appellee was still in possession of said office and discharging the duties thereof, did on the

tenth day of April, appoint the appellant to said office and did issue a commission therefor to him. These facts show that the Governor nominated Mr. Jones to the Senate, in conformity to the 13th section of Article 2, of the Constitution, as Inspector of tobacco at Warehouse No. 2, as successor to the appellee, whose term would expire on the first Monday of March following. But as that nomination was rejected by the Senate, no appointment was made, and the appellee still held the office, and was lawfully in discharge of its duties under that clause of the thirteenth section of the Constitution which provides that incumbents of the offices shall continue in office "until their successors, respectively, qualify according to law." On the third day of April ensuing, the Governor again nominated to the Senate for Inspector of Tobacco at said Warehouse the appellant; but the Senate, whether on account of the pressure of legislative business, usually existing near the close of the session, or whether from other causes, we are not informed, finally adjourned, without having either rejected or confirmed said nomination, and thus again there was a failure of an *appointment* of a successor to the appellee, who continued to hold the office and discharge its duties under the clause of the thirteenth section of the Constitution, to which we have before referred. No vacancy, as we have said, existed from the first Monday in March, on which day the Constitution provides that the term of office of Inspectors of Tobacco shall commence, down to the time of adjournment of the Legislature, nor did its final adjournment without any action by the Senate, on the nomination of the appellant cause a vacancy, which had not occurred before. There was no vacancy in the office, which the Governor was authorized by the Constitution to fill during the recess of the Senate, and, consequently the appointment of the appellant is void and of no effect, and the appellee is entitled to hold the office until his successor shall have been appointed and qualified

in accordance with the directions of the thirteenth section of the second Article of the Constitution.

It becomes unnecessary, in the view we have taken of this case, to notice the commission, which was issued to the appellant, further than to say, that, even if the appointment of the appellant had been constitutionally made to fill a vacancy, its terms as to mode of appointment and continuance in office of the appellant, are not in accordance with the provisions of the Constitution relating to, and governing, appointments to fill vacancies occurring during the recess of the Senate.

The order appealed from will be affirmed with costs.

*Order affirmed.*

(Decided 13th July, 1882.)


STONE, J., dissented.


ALVEY, J. delivered the following concurring opinion:

When this case was first presented I was rather inclined to the opinion that the power of appointment had been well exercised by the Governor, under the peculiar circumstances of the case; but upon further consideration I am convinced that the appointment of the appellant cannot be sustained.

There is one thing clear, and that is, that it is only a *vacancy* in the office that the Governor, under the Constitution, is authorized to fill, without the concurrence of the Senate. All that class of civil officers contemplated by the Constitution as being within the executive power of appointment, are required to be nominated to the Senate, and the advice and consent of that body taken, before the appointment is complete. The only exception to this mode of appointment of such officers exists in the case of vacancies that occur during the recess of the Senate, or that may occur within ten days before the final

adjournment of that body. This exception exists, and is provided for, from the necessity of the case; and it is only in case of a vacancy *so* occurring, that the Governor has power to fill it without the advice of the Senate, and that simply because such advice and consent cannot reasonably be obtained. The Governor has no power of appointment except as expressly provided by the Constitution or statute; and if he attempt to make an appointment without such express authority, that appointment would simply be without effect. The plain object of the Constitution in this respect is, to secure to the public service officers who shall have the confidence and approval of both the Governor and the Senate; and without this no person can have a right to be inducted into office by virtue of a mere appointment by the Governor, except in cases of necessity before mentioned, and which are expressly provided for; or in cases where, by the law creating an office, the Governor, or some other competent official, may be authorized to make the appointment without reference to the Senate. This is the plain and unmistakable sense and reading of sections 10, 11 and 14 of Article 2 of the Constitution.

Then, the question is, what is a vacancy in office which the Governor is authorized to fill without the advice and consent of the Senate? And this question can, perhaps, be best answered in a negative way, by showing what is not such vacancy within the meaning of the Constitution.

By section 13 of Article 2 of the Constitution, the term of the office now in question, is, as there prescribed, two years *and until* the successor of the incumbent shall qualify, according to law. The term of office of the present incumbent, the defendant in this case, commenced on the first Monday of March, 1880, and he was, according to the terms of the Constitution, entitled to hold for the two years, *and*, in addition thereto, *until* his successor qualified according to law. This, of course, means that his

successor shall be duly appointed and qualified; for unless he be legally appointed he could not qualify according to law.

Now it is too clear for question, that the Governor cannot make a vacancy in the office by appointing a successor to the incumbent. The vacancy must actually exist before the power of appointment can be exercised; for it is only the existence of the vacancy that can call into activity the power to appoint. It is equally clear, that if the Governor had not assumed the right to appoint a successor, the present incumbent would still hold the office, with full and complete powers to discharge all the duties in relation to it. The office, therefore, is not vacant.

If, however, it were conceded that the expiration of the two years had in reality produced a vacancy in the office, as contended by the appellant, still, that vacancy occurred, not during the recess of the Senate, nor within ten days of the final adjournment thereof, but during the session of the Senate, and near about a month before its final adjournment; and therefore the power of appointment could only be exercised, for the filling the office, in the ordinary and usual way, as provided by the Constitution, that is, by nomination to the Senate, and obtaining the concurrence of that body. It would be no such vacancy, under the provision of the Constitution, as the Governor would be authorized to fill without the sanction of the Senate.

But full effect must be given to the terms of the Constitution, that the incumbent shall hold for the term of two years, *and* until his successor shall qualify according to law. The successor here meant is not the appointee of the Governor alone, who is only authorized to appoint in case of a vacancy actually existing, but the appointee of the Governor by and with the advice and consent of the Senate. In such case as the present, where there is an incumbent, if no successor be appointed as the Constitution provides, that is, by the Governor by and with the advice

Smoot *vs.* Somerville.

and consent of the Senate, then clearly the incumbent of the office holds on; and he does so, not as a mere *de facto* officer, but as a lawful and rightful possessor of the office, by virtue of his original appointment. And being thus lawfully in possession of the office, with full power to execute all of its functions, the Governor has no power to supplant him by the mere appointment of a successor, without the concurrence of the Senate. In such case, no vacancy exists that authorizes the appointment by the Governor alone.

The effect of the words following the express limitation of the term of an office, as in this case, "and until his successor shall be appointed and qualified," or, "and until his successor shall qualify," has been the subject of frequent judicial determinations of Courts of high authority, and the construction of those terms has become fixed and settled. They are held to mean, according to their plain import, an extension of the definite term of office, and that no vacancy exists in the office while an incumbent, lawfully appointed, holds by virtue of such extension of his term; and, of course no vacancy existing, no appointment can be made merely to fill a vacancy. The very object of employing such language, in the limitation of the term of office, is to prevent a vacancy occurring before a successor is duly appointed and qualified, as may be provided. The cases so holding are quite numerous, but it is all-sufficient for the present purpose, to refer to the cases of *Comm. vs. Hanly*, 9 *Penn. St.*, 513; *State vs. Lusk*, 18 *Mo.*, 333; *The People vs. Tilton*, 37 *Cal.*, 614; and *State vs. Howe*, 25 *Ohio St.*, 588.

It would appear from the facts in this case, that the Governor did his duty in nominating a person to the Senate for the office in question; but why such nomination was not acted on does not appear, and of course it is no subject with which this Court can have concern.

I shall, for the reasons I have stated, concur with the rest of the Court in affirming the order of the Court below, denying the mandamus.