THE STATE OF FLORIDA EX REL. A. C. ROBERT,. PLAINTIFF, VS. TIMOTHY MURPHY, COUNTY TREASURER OF DUVAL COUNTY, DEFENDANT.

AND

IN RE. COUNTY COMMISSIONERS OF DUVAL COUNTY,. FLORIDA.

1. The fourteenth section of Article XVI of the Constitution of 1885, providing that all State, county and municipal officers shall continue in office after the expiration of their official terms. until their successors are duly qualified, is not a limitation upon the power of the Governor to fill vacancies. Its purpose is: to prevent an hiatus in government until the appointing power acts and the appointee qualifies, wherever there is a vacan. cy and an incumbent of a former term to hold over until such qualification.

2. County commissioners are appointed by the Governor by and with the advice and consent of the Senate, and their term of office is two years. The Governor recommended to the Senate certain persons for county commissioners, and the Senate adjourned *sine die* without taking action on the nominations. The terms of the former incumbents appointed by the Governor by and with the advice and consent of the Senate having expired, the Governor made appointments to hold until the end of the next ensuing session of the Senate, unless appointments should be sooner made and confirmed by the Senate: *Held,* That the right of the former incumbents to continue in office ceased when the appointees of the Governor qualified and were commissioned.

3. A mere *de facto* officer is one who is without lawful right to exercise the functions of the office which he is exercising. To constitute a *de facto* officer it must be shown that he is acting under such circumstances of reputation or acquiescence as are calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumes to be. One official act does not show that the persons doing such act are *de facto* officers, when it also appears that other persons have been commissioned and have met and organized as occupants of the same office.

4. There can not be two *de facto* officers, or sets of officers, in one office at the same time.

Governor's appointment of county commissioners held valid.

Demurrer overruled.

### STATEMENT.

On the calling of the above cause in mandamus, upon the relation of Robert, counsel reported herein as appearing for the Marvin board of county commissioners announced that they desired to argue the question of the right of such board to the offices claimed by the members thereof. The court stated that under its impressions of the law, the decision of the mandamus case would not involve an inquiry into

the *de jure* right of even the Powell board, which board authorized the drawing of the warrant sued on by Robert; but upon further colloquy and consideration stated that as the public interests in Duval county demanded a prompt settlement of the contest between the two boards of county commissioners, that although it was entirely irregular, the court would, if both of such boards so desired, adjudicate the matter, upon the members of each board filing a written agreement signed by them individually that the court should do so, and thereby becoming parties to the proceedings for the purposes of such decision. Counsel upon both sides having accepted the suggestion, the argument proceeded upon the understanding that such agreement should be filed; and subsequently agreements signed by all the parties individually, binding themselves to abide the decision of the court as fully as if the issue were raised by information in the nature of a *quo warranto*, to which they should be parties, were filed.·

*A. W. Cockrell & Son*, for Plaintiff.

*F. P. Fleming, John E. Hartridge* and *W. B. Young* for Defendant.

RANEY, C. J.:

In this cause Benjamin R. Powell, George A. De-Cottes and B. M. Baer, with J. D. Kelley and W. S. Pickett, were nominated by the Governor and confirmed as county commissioners of Duval county by the Senate at the session of the Legislature which met on the first Tuesday after the first Monday of April, 1891, and adjourned June 5th of the same year, and they were commissioned by the Governor on the 12th day of the latter month. At the session of the Legislature con--

vening on the corresponding Tuesday in April of the present year, and adjourned on the second day of June, the Governor nominated for county commisioners of that county Charles Marvin, T. V. Porter, E. F. DeCottes, J. D. Kelly and W. S. Pickett, but the Senate adjourned without taking any action on the nomination; and subsequently on the 16th day of June the Governor commissioned the last named parties, each for a separate district, to be county commissioners "until the end of the next ensuing session of the Senate unless an appointment be sooner made and confirmed by the Senate." Powell, George A. DeCottes and Baer claim they continue to be the lawful county commissioners by virtue of their former appointment; whereas the others are asserting their claim under the later commissions.

The Constitution (sec. 5 of Article VIII) ordains that there shall be appointed by the Governor, by and with the consent of the Senate, in and for each county five county commissioners, and that "their terms of office shall be two years," and that one commissioner shall be selected from each of five districts of a county. The 14th section of Article XVI of the Constitution is, that "all State, county and municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified." The contention of the Powell board is that they are continued in office by this section until the qualification of successors who may be nominated by the Governor and confirmed by the Senate at some ensuing session of the Legislature, and that the Governor's action in the appointment of the new or Marvin board was without authority of law.

There has been no decision of the precise point by this court. At the general election held November 6th, 1888, persons were elected to fill severally certain

county offices in Duval county, but they failed to give bond and qualify within sixty days after their election; and it was held in an advisory opinion rendered January 16th, 1889, to the then recently installed Governor, that the terms of such county offices beginning on the first Tuesday after the first Monday in January, 1889, had become vacant on account of the omission stated; and that he was authorized to fill such vacancies by appointments which would expire on the qualification of successors to be chosen at the general election in 1890. In this opinion several provisions of the Constitution are referred to; the controlling ones as to the power and its limitations being the 7th section of Article VIII, in providing that "if any person elected or appointed to any county office shall fail to give bond and qualify within sixty days after his election, the said office shall become vacant;" and Sections 6, 7 and 9 of Article XVIII, of which the first is, that "the term of office of all *appointees* to fill vacancies in any of the elective offices under this Constitution shall extend only to the election and qualification of a successor at the ensuing *general* election;" and the second, that "in *all* cases of *elections* to fill vacancies in offices the election shall be for the unexpired term;" and the last fixing the first Tuesday after the first Monday in November, 1888, and every two years thereafter, as the days for the election of all elective State and county officers "whose terms are about to expire, or for any office that shall have become vacant." As is mentioned in that opinion, the seventh section of the fourth or executive article provides that "when any office, from any cause, shall become vacant and no mode is provided by this Constitution or by the laws of the State for filling such vacancy, the Governor shall have the power to fill such vacancy

by granting a commission for the unexpired term;" but it was held that the term of the executive appointment was limited not by this, but by the sixth section of the sixteenth article, *supra*. It was not thought then that the power and duty of the incumbents of the preceding terms to hold over under Section 14 of Article XVI, *supra* (State *ex rel.* Law vs. Saxon, 25 Fla., 792, 796-7, 6 South. Rep., 858; s. c. 30 Fla., 668, 700, 12 South. Rep., 218), was a limitation upon the power of the executive to appoint to fill the vacancies recognized by Section 7 of Article VIII to exist; nor is it so contended now; but, on the contrary, we understand the correctness of the conclusion reached in the advisory opinion to be conceded.

The primary question presented by the case before us is whether or not there was a vacancy in the office of county commissioner of Duval county when the Governor commissioned the Marvin board. The position of counsel for the Powell board is that there was not a vacancy, and for the reason that the Constitution contemplates that the old commissioners shall continue in office until new commissioners, confirmed by the Senate on the nomination of the Governor, have "duly qualified;" that such commissioners and no others, as long as the old remain in office, are the "successors" of the latter within the meaning of Section fourteen of Article XVI. Of course it is not to be denied that it was the duty of the Governor to send to the Senate nominations for confirmation as he did at the last session of the Legislature; and we deem it entirely immaterial to the decision of this case to consider whether the terms of such nominees, had they been confirmed, would have begun at the time of such confirmation, or not until the 12th of June, the day succeeding the expiration of the two years named in the

commissions of the Powell board, or at a still different time. Passing, as not meriting discussion, when the term actually began, there was still a term, either begun, or about to begin, which the law required to be filled by the action of the Governor, with the consent of the Senate. That it was the duty of the Senate to act on these nominations, giving or refusing consent thereto, can never be seriously denied, except upon the hypothesis that the terms of the old commissioners had not expired in fact, and that consequently there were not yet any terms to fill. No such contention as this is presented. Assuming, what is not denied, that the nominations were lawfully made, there was at least a prospective vacancy in office which the Constitution contemplated should be filled by the Governor, with the consent of the Senate, and we are fully satisfied, even assuming that the two years for which the old board were confirmed had actually expired, that pending the session of the Senate there was no power in the Governor alone to appoint to fill a vacancy. Pending such session the old commissioners continued in office under Section 14 of Article XVI. They did not hold over, however, as furnishing the "mode" provided by the Constitution for filling the new term, but simply as filling a part of the new term temporarily and, at least, until the Governor and Senate, both of whom were in a position to act, should do so. The Governor and Senate, while in a position of present capacity to act, were the "mode" provided by the Constitution for filling the new term, and until they should do so, the organic law contemplated that the old commissioners should hold over "*after the expiration of their official terms;*" not as holding a part of the official term, but simply as the lawful occupants of a part of another term until the appointing

power capable of filling it, whatever that power may be, should act and the appointee qualify. This holding over is necessarily not a limitation on the power of the Governor and Senate; it could not be because if it were there could be no appointment to the new terms of offices after the expiration of the "official terms," or during such *post* official holding; nor, if the advisory opinion is correct, was it a limitation upon the power of the Governor in the case covered by it, though of course as a matter of fact the old officers there held over into the new terms by virtue of the stated fourteenth section until the appointees of the Governor qualified.

Of course it is not to be lost sight of that in the cases covered by the advisory opinion the people had acted at the time and in the manner provided by the Constitution for selecting the persons to fill the new terms, and the vacancy recognized to exist there had grown entirely out of the default of the persons selected to do their part in qualifying for their positions; and such default having extended beyond the period allowed by Section seven of Article VIII for qualifying, they forfeited the right which their election by the people gave them to hold the office, and it became "vacant" as declared by the Constitution in Section 7 of Article VIII; and this too, notwithstanding the provisions of Section 14 of Article XVI as to the holding over of former incumbents. In the case before us the omission of a filling of the new term is, on the contrary, attributable solely to the fact that the Senate has failed to take any action on nominations sent to it by the Governor. It, however, notwithstanding this difference in the cases, cannot be denied that the advisory opinion is entirely inconsistent with the idea that the

14th section of Article XVI was intended by the Constitution as the "mode" * * * provided by the Constitution for filling the new office, or as a limitation upon the power of the Governor to appoint. The conclusion of that opinion is predicated upon the theory that that section was not intended to continue the incumbent of the former term, *chosen by the people themselves*, in the new office until the people should act at the next "ensuing general election" (sec. 6 of Article XVIII), and the subject of their choice at such election should qualify, but that it was intended to supply an incumbent until the Governor should act, and thereby to prevent an hiatus in government.

If the stated fourteenth section can be given the effect of having been intended to fill the *new terms* of offices with former incumbents until the original power authorized to fill them does so, there is no room for doubting the illegality of Governor Mitchell's action in the appointment of the Marvin board, or for questioning the right and duty of the Powell board to hold over till the Senate shall confirm successors to them, no matter how long that may be. Was that section intended to have this effect? There was no such general provision in the Constitution of 1868, of which the present organic law is a revision, yet in the case of cabinet officers the provision was that they should hold their offices "the same time as the Governor, or until their successors shall be. qualified," and in that of a county judge it was that he should hold his office for "four years from the date of his commission or until his successor is appointed and qualified," and in the case of State attorneys it was the same, substituting "and" for "or." Each of these officers was appointed by the Governor upon the advice and consent of the Senate. The sole provision in that Con-

stitution as to appointments to fill vacancies was the the seventh section of Article V; which section corresponds to the 7th section of Article IV of the present organic law, set out *supra*, the only difference being that the words "which shall expire at the next election" appear in the old instrument in place of the words "for the unexpired term" in the new one. The first Legislature assembled under that Constitution passed an act relating to vacancies in offices, approved August 6th, 1868, which, after defining certain vacancies, enacted that *in all such cases, and in all other cases* in which a vacancy may occur, if the office be a state, district or county office, other than a member or officer of the Legislature, it shall be the duty of the Governor to fill such office by an appointment, * * and in cases requiring the confirmation, or the advice and consent of the Senate, the person so appointed may hold until the end of the next ensuing session of the Senate, unless an appointment be sooner made and confirmed or consented to by the Senate. Section 217, Rev. Stat. In the Advisory Opinion of February 5th, 1872, 14 Fla., 277, the validity of this statute was recognized in connection with the office of Attorney-General where a vacancy, other than at the commencement of a term, occurred in the office during the recess of the Legislature. There is no doubt that the practical construction placed upon the Constitution of 1868, from January, 1877, till it was supplanted in January, 1887 by the present revision, to say nothing of the prior eight or nine years of its operation, was that the old incumbent in the offices of county judge and State attorney should not hold over until the qualification of successors confirmed by the Senate, but on the expiration of their terms or commissions, in the absence of the Senate, new appointments were made by the

Governor to hold, as provided by the above act of 1868, sec. 217, Rev. Stat., *supra*. There is nothing in the practical working of the government, as to the office of Attorney-General, that is inconsistent with that as to the other two offices mentioned.

The position taken in behalf of the relator and the Powell board is based on authorities requiring careful consideration. In Pennsylvania, in the case of Commonwealth *ex rel.* vs. Hanley, 9 Penn. St., 513, where the newly elected officer died before his term began, and without having qualified, the provision of the Constitution was that the officers "shall hold *their offices for three years* if they shall so long behave themselves well, *and until their successors shall be duly qualified.* Vacancies in any of said offices shall be filled by appointments, to be made by the Governor, to continue until the next general election, and until successors shall be elected and qualified as aforesaid." It is said in the opinion that the fundamental error that lay at the root of the relator's case, he having been appointed by the Governor on the theory that there was a vacancy, consisted in the assumption that according to the spirit of the Constitution the tenure of county offices is strictly limited as to time, and that he was elected and commissioned only for this time, *viz*: three years, and that any extension of the time arises solely from the exigency of the case and must be strictly construed; and that this was plausible only by obliterating from the Constitution several important words. The meaning of the Constitution was held to be that regular incumbents could not hold office less than three years if they behaved, although on the happening of certain contingencies they might hold for a longer period, and that former incumbents duly elected and qualified

should hold until successors were "duly qualified," and that "duly qualified" included an election by the people; but that the election did not of itself fill the office or make a successor, but the party elected must also give bond and be sworn and commissioned, to be a "duly qualified" successor. That the Governor could appoint only where there was a vacancy, and there could not be a vacancy in an office where there was a person in possession, having a perfect right to exercise its functions and receive its emoluments; and further, that the primary object of the framers of the amended Constitution was to diminish as far as practicable executive patronage, and in accordance with this policy it was thought proper to confine the power of appointment to the single case where there was no one authorized to perform its functions. The decision was that the appointment by the Governor was illegal, and that the defendant held over until some one should be elected by the people and duly qualified. In Missouri, in the case of State vs. Lurk, 18 Mo., 333, the statute provided that the state printer to be elected at each session of the legislature should hold *his office* *"for two years*, commencing the first day of May next thereafter *and until his successor shall be elected and qualified.*" The legislature of 1852 failing to elect a printer at one session, the Governor made an appointment, and it was decided, one of the three judges dissenting, that the incumbent of 1850 held over. The sole question was held to be whether or not the office became vacant on May 1st, 1852, and it was said that the public printer was a statutory office, and that it was to be taken as the clear intent of the statute that he should be the appointee of the assembly except in those cases arising after a person has been legally in office, where it became vacant by death, or resigna-

tion, or like casualty, in which cases the Governor was
authorized to fill the vacancy.    That under the ex-
press terms of the act, then, the former incumbent
was in office when the Governor issued the commission
to the relator, and was in under an election by the as-
sembly; that the statute intended to continue him in
office until a successor was elected by the body having
power to appoint such successor, and the failure of
that body to make the appointment when it should
have been made did not vacate his office.    In Califor-
nia, in People *ex rel.* vs. Reid, 6 Cal., 288, where a stat-
ute provided that the legislature should elect a desig-
nated officer, and that he should hold "his office for
two years, and until his successor is appointed and
qualified," and the legislature failed at one of its ses-
sions to elect, it was held that the office became *de
jure* vacant at the expiration of the incumbent's term,
and the Governor might appoint to the vacancy under
the eighth section of the fifth article of the Constitu-
tion of that state, which was the same as the seventh
section of our fifth article, substituting for the expres-
sion "for the unexpired term," in the latter, the
words "which shall expire at the end of the next
session of the legislature, or at the next elec-
tion by the people."    In the opinion in this case the
Pennsylvania case and the former of the Missouri
cases are referred to and disapproved; and it was said
that the words "and until his successor is appointed
and qualified" were only incorporated to prevent a
hiatus or interregnum occurring between the date of
the termination of the office and the date of the suc-
cessor's entry upon his duties, and that in this inter-
val he was a mere *locum tenens.*    In People *ex rel.*
vs. Mizner, 7 Cal., 519, that of Reid, and that of Mott,
3 Cal., 504, where a judicial district was created and

the legislature failing to provide a judge, the Governor appointed one, were recognized as holding properly, that a vacancy arose from the failure of the appointing power to act. In People vs. Whitman, 10 Cal., 38, the party elected comptroller did not qualify, and the Governor appointed the relator to the new term, but the old incumbent refused to surrender the office. The provision of the Constitution was that he "should hold *his office for two years* from the time of his installation, *and until his successor shall be qualified*." Of this language it was said by the court, that the term of the office is fixed at two years certain, with a contingent extension, and that when the contingency happens the extension is as much a part of the entire term as any portion of the two years; that the language was just as clear and express that he should hold it until his successor was qualified, as for the two years; *that both provisions relate to the term for which he should hold his office*; and in effect, that the failure of the comptroller-elect to qualify created no vacancy in the office, but a mere extension of the term of the particular incumbent. The decision of the court, Judge Field dissenting, was that the prior incumbent continued in office till the election and qualification of a successor. It is said in the opinion, in that the executive officers were elected by the people, and that under an elective system it is more proper that the officers should hold over than that the duties should devolve upon those in whose selection the people have no choice, and that it was only in cases where there is no incumbent of the particular office to hold over that the system would allow the appointment of the executive to fill the office; and citing the case of Mizner, *supra*, where, we may remark, it is said that the secretary of state is the only

officer created by the Constitution in which the ex-
ecutive constitutes any part of the appointing power,
it is observed that the Constitution had studiously re-
stricted the patronage of the Governor.   People vs.
Tilton, 37 Cal., 614, is a case in which the officer was
to be elected by the legislature in joint session, and
was to hold *"his office for the term of four years and
until his successor is elected, commissioned and qual-
ified as in this act provided."*   The legislature failed
to elect, and the Governor, holding there was a va-
cancy, appointed and commissioned the relator to the
office.   It was held that the next legislature might
elect, and that until there was such an election the de-
fendant, the old incumbent, held over.   Two of the
five judges dissented.   The reasoning is about the
same as that in the case of Whitman, it being
also said, *inter alia*: "It was evidently intended
by the legislature that the commissioners elected by
the legislature should hold till another should be
elected, notwithstanding one legislature might fail to
act.   It is provided in the 15th section that when va-
cancies occur in certain modes the Governor shall ap-
point to hold until it can be regularly filled in the ap-
pointed mode.   But in all these cases there is no
incumbent, *locum tenens*, or party in any way author-
ized to discharge the duties of the office.   The 15th
section enumerates the cases in which it was intended
that the Governor should appoint, and it must be pre-
sumed that it enumerates all such cases.   It seems
manifestly the intention of the legislature not to au-
thorize the Governor to appoint in any case where there
is a party authorized to discharge the duties of the
office.   Although the term has expired and the old in-
cumbent only holds over till his successor is duly
qualified, although he is not entitled to hold as the

regular incumbent of the term, he is still a temporary
incumbent and authorized to discharge the duties of
the position until a regular incumbent of the term du-
ly qualified, presents himself.   He is not merely act-
ing *de facto*, but *de jure*, under the express authority
of the law.''   The provision is not that the old incum-
bent shall hold till the electing body has an opportu-
nity of electing a successor, but till his successor is
elected, commissioned and qualified as in this act pro-
vided;   *     * by a joint convention of the legisla-
ture; and not by appointment by the Governor.   In
People vs. Bissell, 49 Cal., 407, the defendant's term
of office, the office being one for appointment by the
Governor and confirmation by the Senate, and the
term being for four years, would have expired on No-
vember 29th, 1875.   In July, 1874, the Governor, the
legislature not being in session, appointed relator.   In
the opinion the views of the majority of the court in
the case of Tilton are affirmed by at least two of the
judges, a third concurring "specially."   In Rosbor-
ough vs. Boardman, 67 Cal., 116, the opinion was ex-
pressed, People vs. Tilton, and People vs. Bissell, *su-*
*pra*, and Strattan vs. Oulton, 28 Cal., 51, being cited,
one of the judges not concurring therein, that a public
office does not become vacant in that state except up-
on the happening of one of the events enumerated in
the statute.   In Indiana, Stewart vs. State, 4 Ind.,
376, where no election was held for school trustee, who
was to be chosen annually and continue in office till
his successor is elected and qualified; and State *ex rel.*
vs. Harrison, 113 Ind., 434, where the legislature fail-
ed to elect a successor of the incumbent president of a
Board of Benevolent Institutions, and decided under a
section of the organic law, to the effect that the pro-
vision that an office should be held "for any given term

should be construed to mean that such officer should hold for such term and until his successor shall have been elected and qualified," the view expressed being that all offices to which it applied were held by the same title or by as high and lawful tenure, after the prescribed term, until the title of a duly elected and qualified successor, chosen by the same electoral body, attaches as before and during such term. In Ohio, State *ex rel.* vs. Howe, 25 Ohio St., 588, where a statute continued former officers and then provided that their "successors" should be appointed by the Governor with the advice and consent or the Senate, "to hold their offices for three years from the date of their appointment, and until their successors are appointed and qualified, unless vacancies occur from death, resignation or removal for cause, as herein provided;" and the defendant was thus appointed on April 16th, 1872, and the Governor appointed relator April 9th, 1875, the legislature not being in session, to hold for three years from April 16th, 1875; the act also provided that "vacancies in" such offices "shall be filled as the original appointments are made, except when the general assembly is not in session, and then by the Governor, until the 20th day of the next session of the general assembly." Section 3 of Article XV of the Constitution also providing as to such officers that the Governor should have power to fill all vacancies that might occur, until the next session of the general assembly, and until a successor to his appointee should be confirmed and qualified. In North Carolina, People vs. McIver, 68 N. C., 467, where the provision was that the "*terms*" of the officers were "to commence on the first day in January after their election, *and continue until their successors are elected and qualified*," sec. 1, art. 3, and

sec. 13 of the same article ; it was also provided that "if the office of any such officers shall be vacated by death, resignation or otherwise, it shall be the duty of the Governor to appoint another until the disability be removed or his successor be elected and qualified." In Michigan, People *ex rel.* vs. Lord, 9 Mich., 227, where the officer *was to hold his office for four years, and "until a successor is elected and qualified."* In Maryland, Smoot vs. Somerville, 50 Md., 84, where the Constitution provided, as to all officers appointed by the Governor and Senate, that they should be nominated to the Senate within fifty days of the commencement of the session, their term of office * * shall commence on a stated day, "and continue for two years, and until their successors respectively qualify according to law," and that in case of any vacancy during a recess of the Senate in any office which the Governor had power to fill he should make an appointment to last till the end of the next session, or until some other person should be appointed to the same office, such nomination to be sent to the Senate within thirty days after its meeting; and if a vacancy should occur during a session of the Senate in any office which the Governor and Senate have power to fill, he should nominate to the Senate before its final adjournment a proper person to fill the vacancy, un-less such vacancy should occur within ten days before such adjournment. Here the Governor nominated a person for successor to an existing incumbent and the Senate rejected, and then he nominated another, and the Senate adjourned the same day without taking any action on it, and after the adjournment the Governor appointed the last named person. One of the judges dissented.

There are however, authorities of a contrary effect. In the case of State vs. Cocke, 54 Texas, 482, where an assessor of taxes was elected at a general election and failed to qualify within the time allowed, and some days after esignred, and thereupon the defendant was appointed and qualified. The person elected at the previous election, Bickford, had duly qualified and entered upon the duties of his office ; Bickford claiming to hold over, sued for the office. The Constitution provided for an election of a successor, who should "hold his office *for two years and until his successor is elected and qualified.*" A statute gave authority to the commissioner's court to fill a vacancy for the unexpired term only, and until the election and qualification of an assessor at the next general election. In the opinion it is said: "Under what circumstances an incumbent who is entitled to hold office until his successor is elected or appointed and qualified can lawfully hold over, has frequently been the subject of judicial investigation, and has given occasion to disagreement of opinion. The primary object of this provision that the incumbent is entitled to hold until his successor is elected or qualified is simply to prevent, on grounds of public necessity, a vacancy in fact in office until the newly elected or appointed officer can have a reasonable time within which to qualify. The right of the officer who thus holds over is by sufferance rather than by any intrinsic title to the office. This view accords with the settled policy of our state Constitution restricting the duration of the terms of office." It was held that the appointment was valid. In the opinion of Judge Field, in People vs. Whitman, *supra*, cited with approval in the Texas case just mentioned, it is said: "The existence of an incumbent and a vacancy in the same office

at the same time is only impossible where the office is of the same term. There is one office, but there are different terms in which it is to be held. It may be filled for one term and vacant for the succeeding term. * * The Constitution limits the term of the office of comptroller to two years, but that there may be no interregnum between the expiration of his term and the entry of his successor, it also provides that he shall hold till his successor is qualified. The successor is to be designated in one of two ways: In the first instance the designation is to be made by the ,people, but if that fails to fill the office then the designation is to be made by the Governor. There is no difference between a vacancy occasioned by the failure of the person elected to qualify and a vacancy occasioned by his resignation immediately upon qualifying. If any other view could be sustained it would follow that 'the old incumbent' would hold for the entire term for which 'the person failing to qualify' was elected." And in the dissenting opinion in Tilton's case, 37 Cal., *supra,* it was held that the legislature had no power to continue the old incumbent in office beyond four years, the constitutional limit of terms of statutory offices, without a re-election, except as a mere *locum tenens,* to avoid an interregnum in office; and that the office would be vacant nevertheless, and subject to be filled by the Governor in the absence of other method designated by law. In Attorney-General vs. Burnham, 61 N. H.,594, the statute made it the duty of the incumbent prudential committee, a district school officer, to issue his warrant for the annual election by the voters of the district, and if he neglected to do so, a justice might do so on application, and if the officers were not chosen before a stated day a vacancy should be deemed to ex-

ist. The prudential committee and certain other officers were to hold their offices for one year or until others are elected or appointed and qualified in their stead, and the provision of another section of the statute was that whenever a vacancy occurs from any cause, the selectmen, upon application, are required to fill the vacancy; and the officers appointed hold their offices until new ones are legally chosen and qualified. Burnham, the defendant, was the old incumbent and claimed to have been re-elected at a meeting held under a notice which he had put up, but had been torn down at once through a conspiracy to which he was a party, which meeting was attended by less than one-tenth of the voters, and was not known of except by those who were privately informed. This election was held to be illegal, but it was further held that it was the intention of the statute that if the district failed to hold its annual meeting before April 20th, the offices should be deemed so far vacant that the selectmen may, upon application, appoint persons to perform the duties, but that in default of such appointment, or of an election, the incumbents of the preceding year shall hold over in order that there may be no interruption in the management of the affairs of the district; that after April 19th they were to be regarded rather as temporary occupants of the offices liable at any moment to be displaced by the appointees of the selectmen, or at the next annual meeting, if none are appointed.

It may be specially remarked of the Pennsylvania case that a failure to qualify, which was held there not to constitute a vacancy, has, at least in the case of all elective county officers, been made by an express provision of our Constitution to create a vacancy; and our statute extends as well to the cases of appoint-

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

ments in offices, Rev. Stat., Sections 214-217; and of this decision, and of all the others reaching the same conclusion, it may be safely affirmed that the purpose, attributed by them to the Constitution or statute under consideration, that the old incumbent should hold over to the exclusion of any appointment by the Governor, is to be found in the effect of the language of the provisions and the fact of limiting the appointing power to cases of *vacancy*, coupled with the further idea that there can be no vacancy in an office where there is any person who has the legal right to exercise its functions and receive its emoluments. The disposition shown by the people in their organic law, or the legislature in a statute, to limit the power of the Governor, the fact that the failure of the regular or ordinary agency to appoint to, or to fill, the new term has not been made a cause of vacancy, and the idea of the wholesomeness of continuing an experienced official in office, are also invoked by these courts as an auxilliary in reaching a conclusion. There is no purpose to question now the result which these several decisions have reached, though, as is apparent, they have not always commanded unanimous conclusions; still it can not be maintained that the mere fact that a Constitution or a statute provides a person to fill a new term of an office, or to perform its duties until a successor is chosen and qualified, is conclusive upon the question whether or not that successor can be chosen in any other mode than that by which the continuing incumbent was selected. That it has its weight in shaping the conclusion, can not be denied; but it is merely one fact to be considered with such others as the law may present in forming a correct judgment as to the meaning of that law, whether organic or statutory.

The inquiry confronting us is as to the purpose shown by our own system. There is in the language of the fourteenth section of our sixteenth article a clear implication that the tenure of an old incumbent, after the expiration of the term prescribed by the Constitution or law, is not a part of the term for which he was chosen; or, in other words, that as to such time he has not, and it was not intended that he should have, an unexpired legal right to hold on to the office until a successor shall be chosen in the same way he was, as distinguished from any other way, or as implying that any other mode of selection was contrary to the intent of the Constitution. The use of the words "after the expiration of their official term," is a recognition of a distinction in the nature of the tenure during that time and the subsequent time. The language implies and means that his regular or permanent tenure has expired, and that it is now both temporary and a part of another term. It is different from that used in the Pennsylvania, and other cases cited *supra*, where he is to hold *his office* or *their offices* for a stated time and until his successor or their successors shall be qualified, or duly qualified, or elected and duly qualified. It is not consistent with the idea that the section was intended as anything else than authority to the former incumbent to hold until a lawful successor, constituted in whatever manner the Constitution may permit, shall qualify, and is inconsistent with the idea of giving such incumbent an adverse right to the place against any one except a successor chosen in the same way that he was. This view is clearly supported by a late decision in Virginia, where it was attempted to impress on the Court of Appeals of that state the conclusions reached in Pennsylvania and other concurring states. The case is that of Johnson vs. Mann,

77 Va., 265. Johnson, the petitioner, was elected treasurer of Petersburg on the fourth Thursday in May, 1879, for the term of three years to commence July 1st, 1879, and qualified and continued in office for the full period; and at the election in May, 1882, Couch was elected for the term beginning July 1st, 1882, but failed to qualify within the time prescribed by law for so doing. The Constitution of Virginia (sec. 25, Article VI) declared that "judges and all other officers elected or appointed shall continue to discharge the duties of their offices after their terms of service have expired, until their successors have qualified." The charter of Petersburg conferred upon the corporation court the power to fill vacancies occurring in the office of city treasurer. Johnson claimed that under the above section of the Constitution, there was no vacancy, and that he was the rightful incumbent and entitled to hold over for the full term of three years, or until the term of the successor to be elected in 1885 should begin, there being no law for a special election. The decision of the court on a rehearing, modifying its former judgment, was that Johnson was entitled to hold over only until the qualification of a successor to be appointed by the hustings court to fill the vacancy. Speaking of the section of the Constitution, the court says: "It simply provided for the holding over by the incumbent after the expiration of his term until his successor shall qualify. The plain, unequivocal import of this section of the Constitution is that when the regular term expires, the office becomes *in the eye of the Constitution*, vacant, but with authority to the incumbent already qualified, to continue by virtue of such previous qualification made effective for the purpose by the Constitution, to discharge the

functions of the office until he is succeeded in the way preferred by the people as pointed out in the Constitution and in the laws made in pursuance of that instrument. The petitioner filled out his regular term; and, under the constitutional provision being considered, is, to prevent evils which would flow from either an accidental or designed failure to qualify on the part of the person elected to succeed him, entitled to go on in the discharge of the duties appertaining to the office, *not his office*, so far into the succeeding regular term as the time when his successor, legally selected, shall be fully equipped as an officer to take charge of the office and perform its functions. * * The petitioner has filled out his full regular term and is simply holding on in this the succeeding regular term, until his successor shall come duly qualified to demand and have the office; and that successor, *ex necessitate rei*, can hold for the residue of the present regular term. * * It is idle to argue that it is an abuse of terms to say an office is vacant when a person is rightfully in possession and discharging all the functions thereof. It is enough to reply that it is thus written in the law. The office of treasurer for the city of Petersburg * * is temporarily occupied by a sort of *locum tenens*, a person designated by the Constitution, and thereby enabled to discharge the duties of the station or place until the coming of his successor, appointed and qualified as prescribed by law."

The seventh section of the eighth article of our Constitution, when it declares that "if any person elected or appointed to any county office shall fail to give bond and qualify within sixty days after his election, the said office shall become vacant," means that the term which such person, so in default, was elected or

appointed to fill shall, when the default became con-
summated, be deemed vacant to all intents and purpos-
es, and not merely that the newly elected person
should not longer have the right to fill it. Vacancy
here means that the office is without such an occupant
as precludes the filling of it in any mode which the
Constitution may provide, or may recognize as lawful;
that notwithstanding the incumbent of the former
term may, and it is contemplated that he shall, con-
tinue in office, or perform the official duties of the
said office *after the expiration of his official term*, and
until his successor is duly qualified, still the office is
vacant as to the new term, in the sense that any office
is vacant which is not occupied by a person chosen to
fill it for such term. The elective county offices being
vacant for the purposes of appointment, notwithstand-
ing the provision of the fourteenth section mentioned,
the filling of the same, in the absence of legislation,
would be controlled by the seventh section of Article
four, but for the provisions of Sections six and seven
of the schedule, the former of which sections of the
sixteenth article limits the executive appointment to
the next regular election. Advisory Opinion, 25 Fla.,
427, 5 South. Rep., 613. Failures to qualify even for
the period of thirty days had long been a cause of va-
cancy, with a resulting executive duty to appoint.
Acts of 1868, p. 35, McClellan's Digest, p. 974. The
purpose, then, of the mentioned fourteenth section be-
ing in the cases of these officers merely to provide a
person to perform the duties till the Governor may ap-
point, what is there in the Constitution to give it a
different or other effect in the case of any other vacan-
cy, or a vacancy in any other office, as to which the
Governor may under any contingency have the power
to fill a vacancy by appointment?

The present Constitution is a revision of the old one. In State *ex rel.* Weeks vs. Gamble, 13 Fla., 9, the seventh section of the fifth article of the old instrument was construed, and it was held that the words "next election" confined its application to elective officers, and that under it the Governor had the power to fill the vacancy occasioned by the ouster, by judgment of this court, of the former incumbent, who was found not to have been eligible for the place at the time of his election, but that the executive appointment extended only till an election should be held, and that it was the duty of the authorities to call an election within a reasonable time; or, in other words, to see that the election was not postponed at the expense of the rights of the people. Though the statutes provided for a special election in this case, the decison of the court was that this did not supply all the necessities of government, and that an appoinment until the choice at an election and the qualification of the person then chosen, was necessary to prevent a hiatus in government. The change made by the revision of the Constitution is to be found in the use of the words "by granting a commission for the unexpired term," for "by granting a commission which shall expire at the next election." The effect of this change is two-fold: First, it makes the section applicable to appointive as well as elective officers; and second, it vests the appointee with the unexpired part of the term, and not merely till an election or other appointment, and the result is that wherever the Constitution and statutes are both silent as to the mode of filling any particular vacancy which may occur in any elective or appointive office, then the Governor is to fill it for the unexpired term. It is apparent that the purpose of the convention and the people in this change was, in so far as

this section alone shows, to extend the Governor's power of appointment both as to the classes of cases to which it should apply, and as to the tenure of the appointee. But as appears from the advisory opinion first mentioned above (25 Fla., 427, 5 South. Rep., 613), this purpose has a modification to be found in the sixth section of the eighteenth article, which reads that, "the term of office for all appointees to fill vacancies in any of the *elective* offices under this Constitution, shall extend only to the election and qualification of a successor at the ensuing *general* election." The purpose of the latter section is that appointees to any vacancy in an elective office should not hold for the balance of the term, but only till the next general election, if one intervenes; and while it operates as a limitation of the terms prescribed by Section 7 of Article IV, it also shows that it was contrary to the judgment and will of the people that there should be special elections to fill vacancies in elective offices, and to this extent it is a limitation on the legislative power as to filling such vacancies by special elections.

The seventh section of Article eight which makes, as did the statute before it, a failure to qualify a vacancy in office, is not the only vacancy recognized by the revised organic law. The fifth section of the eighteenth article provides that "all vacancies occurring by limitation of terms before the general election in 1888, shall be filled as provided for by law, under the Constitution of 1868." The third section of the same article ordained that "all persons holding any office or appointment at the ratification of this Constitution shall continue in the exercise of the duties thereof according to their respective commissions or appointments and until their successors are duly

qualified, unless by this Constitution otherwise provided." The last six words refer to offices not so continued. Considering these sections together we see the framers of the Constitution regarded the expiration of a term a recognized termination of an office (Johnson vs. Mann, 77 Va., 265, 270), as creating a vacancy notwithstanding the provisions of the third section, and that the third section did not cut off or preclude the power of the chief executive to fill it, and did not fill such vacancy permanently or in the manner contended for on behalf of the Powell board in this case; but only as a *locum tenens*. If it had understood that the third section would have such an effect as is claimed here for the fourteenth section of the sixteenth article, the fifth section would not have been ordained. Its presence is accounted for only by the fact that the third section was not to have such effect. It is of course true that these sections relate to officers which were continued by the revised instrument, and the fifth section was not to have any effect after the first election under such revision, still it is plain that as to the first two years of the operation of the new instrument the purpose was that old incumbents should not hold over after the expiration of their terms, as a limitation upon the executive power of appointment, but that notwithstanding the other or third section the expiration of a term should create a vacancy, and that if it occurred during a recess of the Senate, the Governor should have the power to appoint under the statute of 1868.

In the corresponding articles of the Constitution of Ohio there was a simple provision that the officers continued by it in office should continue in office until their successors should be chosen and qualified, but none as to vacancies to be created by the expiration of

terms, and it is invoked by the court in State *ex rel.* vs. Howe, *supra*, as showing that the Constitution did not recognize such expiration as creating a vacancy. Seeing thus that the Constitution recognized expressly, that the expiration of a term of an office created a vacancy for the purpose of filling it by executive appointment, during the two years period referred to, and although another section provided an incumbent in the nature of that provided by Section fourteen of Article sixteen for subsequent years, what is there in the instrument that would authorize or justify us in holding that the word "vacancies," used in the sixth section of the eighteenth article, when it says that "the term of office for all appointees to fill vacancies in any of the elective offices under this Constitution shall extend only to the election and qualification of a successor at the ensuing general election," does not include a vacancy occasioned by an expiration or limitation of terms, or that Section seven of Article four does not?" If Section three furnished an incumbent as it clearly did, why nevertheless should the framers of the Constitution have provided that the appointing power should still exist, and yet be held not to have intended to retain the same power in the permanent workings of the same instrument, through Section seven of Article four, notwithstanding Section fourteen of Article sixteen, or when there was no one to fill the term but a former incumbent under the last stated section? It was the uniform policy of the Constitution that the Governor's power of appointment should not be limited by either Section three of Article eighteen or Section fourteen of Article sixteen. These several sections clearly indicate that the section last mentioned was not understood, or used, or intended, to have the effect claimed for it, but, on the contrary, was in-

tended merely to prevent a hiatus in government until there should be a choice of some one in some legal mode for the vacancy.

There is, except it be as to the office of Governor, Section nineteen of Article four, in the Constitution nothing else that indicates what shall constitute a vacancy, unless it be a removal under Section fifteen of Article four, by the Governor and Senate, as does any judgment of ouster rendered by a competent tribunal. Nor is there in the instrument anything that militates against the idea that a new term which has not been filled is a vacancy. The Legislature being in session as it was, and the new term being vacant in so far as the power and duty of the Senate to fill it, why is it not also vacant for the purpose of being filled when the Senate adjourns without filling it? It is in no different condition as to an occupant in the person of the old incumbent than it was before the adjournment, nor than a new term of an elective county office of which the party elected has made default in qualifying. The policy of the Constitution is that where elective officers are chosen and they do not qualify, there shall still be a vacancy, notwithstanding the provision of Section fourteen of Article sixteen, and there is nothing in the instrument from which it can be inferred that its policy is that no vacancy will exist where there is an expiration of a term, and there has been a failure of the appointing power, or a part of it, to act. The vacancy which arises in the one case from the failure of the officer to qualify is no less actual than that which continues, in the other case, after the adjournment of the Senate, from its failure to act, or even its refusal to assent to a nomination. *The failure of the Senate to act does not create the vacancy. That existed in the eye of*

*the law when the Senate was called on to act; it was made by the expiration, actual or prospective, of the preceding term.* The words "duly qualified" can not, consistently, be given any greater force in one case than in the other. If they do not, in the former case, secure the old incumbent the right to hold until the next regular election, or prevent the Governor from exercising the appointing power, then they can not in the latter case. For the reason that no special election can be held, the power to appoint exists until the next general election is held; and for like reason when the Senate ceases to be in session the Governor may appoint in the interim. State *ex rel.* Fritts vs. Kuhl, 51 N. J. (Law), 191. No other "mode" of filling the vacancy exists or is provided by the Constitution or laws in the one case until the time for the general election is reached; nor, in the absence of legislation, is any in the other until the Senate assembles again. It is not natural or reasonable to give to the fourteenth section of the sixteenth article one effect as to one class of officers, and another as to a different class, unless there is something in the Constitution which clearly shows it was intended that it should have such a variant effect. It would be very difficult moreover to find any substantial reason why the framers of the Constitution, or the people adopting it, should be willing that the Governor should fill by appointment for the period of nearly two years a new term of an elective office, vacant by reason of the choice of the people having failed to qualify, and should not be allowed to do so in the case of an appointive office, the creature of the Governor with the assent of the Senate. If the assent of the Senate is such a guarantee of efficiency or other official merit in the latter case, why is not the

sole and direct choice of the people equally essential in the other? And if the experience of the old incumbent in the case of the appointive office, is so valuable, why is it not so where the officer is elected by the people? These considerations must have addressed themselves to the judgment of the convention in framing, and to that of the people in acting upon the instrument, and finding that as relating to elective officers they were ignored, there is no ground for incorporating them into the policy of the Constitution as to appointive officers. Not only is there no express provision which justifies it, but, on the contrary, there is much in the nature of the instrument which repels the idea that such was the intention of the instrument. It is not an instrument which shows any of the conspicuous jealousy of executive power, which is the subject of remark in some of the opinions quoted from above. It is very true that the calling of the convention which framed this instrument was the result of the opposition among the people to the vast executive power which distinguished its predecessor; yet throughout the State and in that convention there was a very deep and serious conviction that a retention of a great deal of executive power was essential to the welfare of a large and very important portion of the State, and the Constitution shows that although a majority of other counties may, in so far as their own separate interests are concerned, have preferred that the very least power should be given to the Governor, yet they felt that great concessions were due to the people of these counties and to the common interests of the State in so far as they could be affected by the concerns of the latter counties. And, as a result of this feeling, we see that not only circuit judges, judges of criminal courts of record, State attorneys, county solicitors and county

commissioners, made appointive by the Governor, with the consent of the Senate, but we find also that all officers except the Supreme Court and Circuit Court judges and cabinet officers may be suspended by the Governor until the next session of the Senate, for alleged misfeasance, or malfeasance, or neglect of duty in office, drunkenness or incompetency, and may be removed by the Governor and Senate on charges, of the character stated, preferred by the Governor, and without any inquiry into the same before any of the courts; and during such suspension the Governor has power to fill by appointment any office, the incumbent of which shall have been suspended. We find also that it was provided that any new office which the Legislature may create was to be filled by the people or by the Governor, and that the election of such officer can not be given to the Legislature alone. Section 27 of Article III. . Certainly a frame of government having these provisions can not be said to present great sensitiveness as to executive power; but must be acknowledged to present a palpable recognition of a grave necessity for the exercise of power which under different conditions would have been withheld from an executive and retained in the people, and in other instances confided solely to the courts.

The legislation in this State on the subject of vacancies is, as is apparent from language quoted above from the act of 1868, not exclusive of, but expressly recognizes that other causes of vacancy than those specified in it may exist; and hence it cannot be invoked as the legislation of California has been in the later decisions there.

The Maryland decision is founded on the several provisions of the Constitution, and the remark in one

172 SUPREME COURT.

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

of the opinions that the expressions "and until his successor shall be appointed and qualified," or "until his successor shall qualify," and a similar remark in Mechem on Public Officers, has been the subject of frequent judicial determination of courts of high authority, *and the construction of those terms has been fixed and settled*, are not fully borne out by the authorities; but is, as the conflict of authority shows, still a matter open for discussion and decision whereever it has not been settled.

The convention is to be accredited with knowledge of the different constructions which the words, or those of like nature, had received, and with the previous practice of our government as to offices as to which they were used in the former Constitution, and conceding that the view to which the Constitution gives support is that the fourteenth section was intended for the purpose of supplying the guarantees against a hiatus in government, which are naturally supplied by a former incumbent, when there is one, continuing to act until the term can be filled, and not as a limitation upon any of the powers granted by the Constitution. The purpose of the Constitution was that a vacancy not filled in the regular manner, was nevertheless a vacancy, and where the law does not provide for filling as is contemplated by Section 7 of Article IV, this section covers it. The second section of the act of 1868 (sec. 217, Rev. Stat.), has been recognized by the executive branch of the government as providing a mode for filling it, until the Senate can act, and if that does not, then the case stands under the section of the Constitution last referred to. There has been no conflict between the legislative and the

executive branches on this question, as there was in Ohio, as indicated by the opinion in State *ex rel.* vs. Howe, *supra*.

As to the argument founded upon possible official delinquency in the Governor, we can well answer in the language of the New Jersey court, in the case of State *ex rel.* Fritts vs. Kuhl, *supra*: "The possibility of abuse loses its significance the moment we distinguish between power and duty. The question of power alone can be considered by this court. For willful breach of official duty, or abuse of the power committed to him, the Governor is, like other civil officers, liable to impeachment, and must answer to the tribunal erected under the Constitution for the trial of such cases. Even though the Governor should be guilty of a breach of duty in refusing to send any nomination at all to the Senate, during its session, it would be none the less within his power, and his duty after the adjournment, to fill the vacancy. In that case, the impeachable conduct would be his willful refusal to advise with the Senate, and not his act in filling the vacancy in the after recess." Again, if we enter this field of unwholesome possibilities, as against the Governor, what is to be the limit of that field as applied to official delinquency upon the part of the Senate? And what remedy by compulsion or even impeachment is there against the Senate? This field is not prolific of aid in construing constitutions.

As to the 33rd section of the judiciary article, which provides that "when the office of any judge shall become vacant from any cause, the successor to fill such vacancy shall be appointed or elected for the unexpired term of the judge whose death, resignation, retirement, or other cause created such vacancy," it is to be remarked that its purpose was to prescribe a

term in such offices so that in case a vacancy occurred pending any term, a new appointee by the Governor and Senate would not hold for six years from his confirmation or commission, but only for the remainder of the term, thus changing the rule of the former Constitution as to such officers. And where an appointive officer resigns, or other vacancy occurs, in a recess of the Legislature, we do not concede that the vacancy is to be filled by mere executive appointment for the balance of the term, instead of by such appointment until the next session of the Senate, under the act of 1868. Section 217, Revised Statutes.

Acting upon the agreement filed by the several county commissioners (without which agreement it would have been impossible to pass upon the *de jure* status of either board, or of any member of either, Mechem, sec. 330 and authorities), we decide that the Marvin board are and have since they were commissioned, been the lawful county commissioners of Duval county, in so far as anything disclosed by this record enables us to judge.

II. We are satisfied that the appointments made by Governor Mitchell are valid, and that the lawful holding of the Powell board ceased on the Marvin board having been commissioned, they having, according to the practice in this State, qualified before being commissioned. Any official action attempted by the former board after that time was unauthorized, and it can have no validity under any circumstances, except as to the public; and as to the public, only on the condition necessary to give them the status of *de facto* officers. It is evident that the pleadings in the mandamus proceedings were not framed with reference to such principle. A mere *de facto* officer is one who is without lawful right to exercise the

functions of the office, which he is exercising. He must show that he is acting under such circumstances of reputation or acquiescence as were calculated to induce people without inquiring, to submit to or invoke his action, supposing him to be the officer he assumes to be. "Third persons, from the nature of the case can not always investigate the right of one assuming to hold an important office, even so far as to see that he has color of title to it by virtue of some appointment or election. If they see him publicly exercising its authority, if they ascertain that this is generally acquiesced in, they are entitled to treat him as such officer, and if they employ him as such, should not be subjected to the danger of having his acts collaterally called in question." Petersilea vs. Stone, 119 Mass., 465; Brown vs. Lunt, 37 Maine, 423; State vs. Carroll, 38 Conn., 449; King vs. Bedford Level, 6 East, 356. Whatever may be the real facts in the case before us, certainly no general acquiescence or reputation is shown by the alternative writ of mandamus and the return thereto. The Marvin board is shown to have met in the clerk's office and organized two days before the warrant sued on was drawn. Whether or not the Powell board did any other act, or whether or not any one recognized it as the proper board, after the commissioning of the Marvin board, we are not aware. It is certain that the defendant, the county treasurer, is unwilling to recognize it, and the burden is on the relator to present the facts which may show that it was the *de facto* board up to and inclusive of the time of drawing the warrant. It may be that the Marvin board was as generally recognized as the other one. It is certain that there can not be two *de facto* officers in the same office at the same time. Mechem, section 325 and authorities.

Treating the motion of the relator as a demurrer, it must be overruled.

MABRY, J.:

Section 5, Article VIII, of the Constitution of 1885 provides that "there shall be appointed by the Governor, by and with the consent of the Senate, in and for each county, five county commissioners. Their terms of office shall be two years, and their powers, duties and compensation shall be prescribed by law. The Legislature shall provide for the division of each county into five districts, and one county commissioner shall be selected for each of such districts."

Section 14, Article XVI, reads: "All State, county and municipal officers shall continue in office after the expiration of their official terms until their successors are duly qualified."

Under the agreed submission of the case now before us the interpretation of the foregoing sections becomes necessary. The facts of the case are admitted, and, in brief, they are as follows: Five persons were duly appointed in June, 1891, by the joint action of the Governor and Senate to be county commissioners in and for Duval county, and their commissions recite that they are to hold their office for two years from the 12th day of June, 1891. During the last session of the Senate the Governor nominated to that body two of the five persons then in office, and three new men, to be county commissioners for that county. The Senate adjourned without confirming said nominations, and without acting upon the same. After the adjournment of the Senate the Governor appointed the same persons nominated by him for confirmation and they have been commissioned. When the last appointments were made by the Governor the period of two

years specified in the commissions of the persons appointed in June, 1891, had expired, and the question involved in the case is whether or not, by reason of the expiration of the two years terms of the incumbents and the failure of a selection of successors to them by the joint action of the Governor and the Senate, such a vacancy has happened in the offices as will authorize the Governor to fill them. And in the very beginning of this investigation it should be remembered that as defined by the decisions, a vacancy in office can only be said to exist when the office or place has no legal incumbent to discharge the duties of the office. The Constitution of 1885 is a revision of the preceding one of 1868, and the sections above quoted are not found in the old instrument. It is the duty of this court now to ascertain and declare for what purposes the said sections were employed, their meaning and effect. These questions touch a vital part of our Constitution, and their importance can not be overestimated. In arriving at the true and correct meaning of the sections under consideration we should not shut our eyes, or refuse to give due consideration to the existing conditions that gave rise to the revision of the Constitution of 1868. Under that instrument the appointing power of the Governor was almost complete in every department of the government; representatives in the legislative branch, Lieutenant Governor, and constable in the executive department, only being exempt from such power. Some were appointed with the consent of the Senate, but many were not. County commissioners, county treasurers, county surveyors, superintendents of common schools and justices of the peace were appointed by the Governor alone, without the

consent or reference to the Senate, and were subject to removal by the Governor, "when in his judgment the public welfare will be advanced thereby." Very few of the public officers by the terms of this Constitution held their offices for designated periods, and until their successors were duly qualified. This was true of State attorneys, county judges and cabinet officers, but probably of no others.

Again, under the Constitution of 1868 there were no cycles, or beginnings and endings of the terms of public officers definitely fixed in that instrument. Cabinet officers were probably exceptions, as they held office the same time that the Governor did, and his tenure was circumscribed. All the other State and county officers held for terms of years, but there was no provision fixing the beginning of these terms. Circuit judges were appointed by the Governor and confirmed by the Senate, and they were to hold their offices for eight years. The construction put upon this provision by the court was that an appointee of the Governor when confirmed by the Senate held the office for eight full years, and that no part of a previous eight years during which another had held the office (but had vacated it) entered into the computation of the time for which the successor appointed held. Under this construction there was no unexpired terms in the office, and the appointee when confirmed by the Senate held a full eight years. Advisory Opinion, 16 Fla., 841. According to this view it could not of course be known in advance when the terms of circuit judges would begin, as unforeseen contingencies might give rise to the beginning of a term in one circuit different from any other in the State. The view promulgated in reference to circuit judges obtained with respect to all the other officers

whose terms did not have a fixed beginning. These officers were not elective, but many of them, as before stated, were appointed by the Governor alone, and some with the consent of the Senate. Where the Governor alone appointed, his appointee, whether at the end of a preceding term in the same office, or at some post-poned date, commenced a new term. Where the Governor appointed with the consent of the Senate, and a vacancy occurred in the office during a recess of that body, the Governor alone appointed temporarily un-der the statute. His appointment was during the va-cancy, and the person who was thereafter appointed with the consent of the Senate commenced the new term of office fixed by the Constitution for the office. In reference to none of the officers, with proably two exceptions—State attorneys and county judges—was it provided that they should hold their offices for the terms prescribed and until their successors were duly qualified. Under this system the expiration of terms even of officers appointed by the Governor with the consent of the Senate, in consequence of biennial ses-sions of the Legislature, was constantly happening during the recess of the Senate, and the executive con-trol over such officers, growing out of the authority to make *ad interim* appointments covering large portions of the terms—from session to session of the Legisla-ture without the consent of the Senate—was almost without limit. Without definite fixed beginnings of terms it is very easy to see how all the tenures of pub-lic officers could work themselves into *ad interim* ap-pointments, and this was the practical workings of the system under the old Constitution. The members of the convention that met to revise that instrument knew of course of the construction put upon it, and the prac-tical workings of the government under it. There was

180 SUPREME COURT.

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

wide-spread dissatisfaction with the appointive system as it existed. Among the demands for a change of this system, the one for a reformation in the appointive power was the most vehement and prominent. The right of the people to elect their public officers was the prevailing view, and this is made manifest not only by the work of the revision itself, but we know it as a part of the political history of the times.

In reference to the tenure of the circuit judges, the very case in which the opinion ot this court under the old Constitution had been given, and which determined the policy in reference to all the other officers of the government, the new Constitution provides that "when the office of any judge shall become vacant from any cause, the successor to fill such vacancy shall be appointed or elected only for the unexpired term of the judge whose death, resignation or retirement, or other cause, created such vacancy." Article V, Section 33. Radical changes were made in reference to the selection of public officials, and all of them, with few exceptions, were made elective by the people. Fixed dates were prescribed for the beginning and ending of the elective officers and provision made for their election by the people. In reference to county commissioners, the officers whose tenures we are now considering, it is provided that they shall be appointed by the Governor, by and with the consent of the Senate, instead of by the Governor alone, as in the old Constitution. What was the purpose of this change? It was undoubtedly for the purpose of securing for the public service in these offices men who possessed the confidence of both the Governor and the Senate. In Brady vs. Howe, 50 Miss., 607, where the provision was that the judges of the Circuit Court should be appointed by the Governor, with the advice and consent of the

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

Senate, the court said: "The initiation, that is, the selection of the person is with the Governor, but the appointment must be with the advice and consent of the Senate. If there were no other provision on the subject (as is the case here) it would not be doubted that the appointment by the Governor alone would not confer a right to the office." The language in Smoot vs. Somervill, 59 Md., 84, in reference to a similar clause is, "the Governor has no power of appointment except as expressly provided by the Constitution or statute, and if he attempt to make an appointment without such express authority, that appointment would simply be without effect. The plain object of the Constitution in this respect is to secure to the public service officers who shall have the confidence and approval of both the Governor and the Senate; and without this no person can have a right to be inducted into office by virtue of a mere appointment by the Governor, except in cases of actual necessity before mentioned." The cases of actual necessity before mentioned were cases of actual vacancy during the recess of the Senate. But it is unnecessary for me to cite authorities on this point, as it can not be doubted that the purpose of the revisers in requiring county commissioners to be appointed by the Governor, by and with the consent of the Senate was to secure men for these offices possessing the confidence of both the Governor and the Senate. No other construction has ever been placed upon such a provision. In case the office of county commissioner should become vacant during the recess of the Senate, the Governor of course could fill the vacancy, but his right to do so depends entirely upon whether or not there is a vacancy in the offices. In the case before us there was no death, resignation or removal in the

offices of county commissioners of Duval county, and
if a vacancy existed in any of them when the Gover-
nor made his appointments in June last, it must de-
pend alone upon the expiration of the two-year terms.
for which the incumbents were appointed. If the ef-
fect of the fourteenth section of Article XVI is to con-
tinue the incumbents in office after the expiration of
their two-year terms, then no vacancy existed, and the
last appointments are void. In ascertaining the true
meaning and effect of this clause it is proper here to
ask what is the real purpose in conferring upon the
Governor the power to fill vacancies ? The courts
have answered this question. In construing a stat-
ute authorizing the Governor to supply vacancies
which may happen in offices filled by appointment by
the Governor, with the consent of the Senate, Chancel-
lor Walworth says, in Tappan vs. Gray, 9 Paige, 506:
"But the sole object of these temporary appointments,
and in a mode different from that prescribed by the
Constitution, is supposed to be for the purpose of pre-
venting a public injury for the want *of some person to*
*discharge the duties of the office until a regular ap-*
*pointment can be made.*" (The italics are mine). In
the case of the State vs. Seay, 64 Mo., 89, it was an-
nounced as a rule that the law abhors vacancies in
public offices, and in doubtful cases the construction
of a law fixing the tenure of such offices would be
greatly influenced by that consideration.

A vacancy in fact occurred in the office of Lieuten-
ant-Governor under the old Constitution, and the Gov-
ernor made an appointment to fill it. The question
arose under this appointment whether the appointee
held the office for the unexpired term, or until the
next election. In announcing the judgment of the
court Judge Westcott says (Weeks vs. Gamble, 13.

JUNE TERM, 1893. 183

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

Fla., 9): "The regular incumbent of the office of Lieutenant-Governor, the Constitution provides, shall be chosen by the people. They are the power to which is conferred the right of selection by that instrument, and any construction of the Constitution which restricts by implication the right to exercise the elective franchise in the selection of this officer, and extends executive power in that direction, is inconsistent with the intent and purpose of the framers of the Constitution creating this office. Their view plainly expressed is that its incumbent should be the choice of the people." The view plainly expressed in the present Constitution is that the county commissioners shall be the choice of the Governor and Senate, and not the Governor alone. Therefore in construing Section 14 of Article VIII, no strained or narrow interpretation should be resorted to in behalf of executive patronage, and to produce a vacancy. To do so would be to violate the rules of construction laid down in the cases mentioned, and, in fact, every rule of constitutional construction on the subject. The law abhors a vacancy, and the language used in reference to a tenure of a public office should have a full, free and liberal construction as against a vacancy.

Before examining the language of the section referred to in order to get at its real meaning in the light of all the surroundings, and the rules of construction applicable in such cases, it will be of assistance to see what construction the courts have uniformly put upon similar language. We have no decision of this court covering the question now presented. The decision in Weeks vs. Gamble, *supra*, announces a wholesome rule for our guidance, but the facts of that case do not meet the present one. The Advisory Opinion, 25

184 SUPREME COURT.

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

Fla., 427, will be referred to later on, but it does not determine the question before us.

The Constitution of Pennsylvania provided that certain clerks should at the time and places of election of representatives, be elected by the qualified electors of each county or district over which the courts extend, and shall be commissioned by the Governor. They were to "hold their offices for three years, if they shall so long behave themselves well, and until their successors shall be duly qualified." It was also provided that vacancies in any of said offices shall be filled by the Governor. One Hanley was duly elected, qualified, and entered upon the duties of the office of clerk of the orphan's court for the city and county of Philadelphia, and continued in the office for the term of three years. One Brooks was elected to succeed Hanley, but died before qualifying, and before commission was issued to him. The Governor conceived the idea that there was a vacancy in the office after the expiration of the three year term of Hanley, and appointed one Broom to fill the supposed vacancy. Hanley refused to surrender the office, claiming the right to hold the same until his successor was duly elected by the people, and *quo warranto* proceedings were sued out to test his right to do so. The court held that Hanley was entitled to the office as against the Governor's appointee. The opinion says: "The fundamental error which lies at the root of the whole case of the relator consists in the assumption that, according to the spirit of the Constitution, the tenure of county officers is strictly limited as to time, *viz*: three years; and that any extension of the time arises only from the exigency of the case, and must be strictly construed. * * * The Constitution reads thus: 'they shall hold their

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

offices for three years, if they shall so long behave themselves well, and until their successors shall be duly qualified.' The obvious meaning of this clause is that they can not hold office less than three years, if they so long behave themselves well; although, on the happening of certain contingencies, they may hold office for a longer period." Again the opinion says: "It will be observed that the terms on which alone the Governor can appoint, are a vacancy in the office, and that there can be a vacancy in an office when there is a person in possession whom all acknowledge to be rightfully in possession, having a perfect right to exercise all the powers and duties of the office, and to receive and enjoy all its emoluments, is a position difficult to comprehend. It is an abuse of terms to say that at the time the Governor issued his commission to the relator the office was vacant, for no person can plausibly deny that the respondent was the rightful possessor of the office at that time."

"The primary object of the framers of the amended Constitution (whether wisely or not it would be unbecoming for me to say) was to diminish, as far as practicable, executive patronage, and in accordance with this policy it was thought proper to confine the power of appointment to the single case of a vacancy in office. What, then, is meant by a vacancy in the office? Surely an office can not be vacant when it is filled by a person in the legitimate exercise of all its functions, in the lawful enjoyment of all its emoluments. It would be a waste of time to enter into an elaborate argument to prove a proposition so plain. But disguise it as you may, this is the case here."

There is no mistaking the meaning of the opinion as to who is meant by the successor in the Constitution of that state. The successor is not the appointee of

186 SUPREME COURT.

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

the Governor, but the successor duly elected and qualified as the incumbent was. The opinion is conclusive on this point, and its language so plain that it can not be misunderstood. This case has been referred to in several subsequent decisions, and none condemn it as an improper construction of the clause in the Pennsylvania Constitution.

The Constitution of Maryland provided that "all civil officers appointed by the Governor and Senate shall be nominated to the Senate within fifty days from the commencement of each regular session of the legislature, and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless removed from office), and until their successors respectively qualify according to law; but the term of office of the inspectors of tobacco shall commence on the first Monday of March next ensuing their appointment." There was also a provision that in case of any vacancy during a recess of the Senate the Governor could fill it, and his appointee could hold until the end of the next legislature, or until some other person was appointed to fill the same; and in case of any vacancy during the session of the Senate in any office which the Governor and Senate have power to fill, the Governor shall nominate to the Senate a suitable person before its final adjournment, unless such vacancy occurs within ten days before said final adjournment. A question arose under this Constitution in reference to the appointment of a tobacco inspector, and the court was called upon to construe it in the case of Smoot vs. Somerville, 59 Md., 84, to which reference has been made. Somerville was appointed by the Governor and confirmed by the Senate, and after duly

JUNE TERM, 1893.        187

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

qualifying served out a term of two years. A short time before the expiration of the two years the Governor nominated to the Senate then in session, G. W. Jones to be inspector in Somerville's place. The Senate rejected the nomination of Jones, and the Governor on the last day of the session of the Senate nominated to that body Smoot, the relator in the case referred to, but the Senate adjourned *sine die* without taking any action on this nomination. Subsequent to the adjournment of the legislature the Governor appointed and issued a commission to Smoot, and he instituted proceeding to try Somerville's right to hold on to the office. Here the decision is squarely against the authority of the Governor to make the appointment, on the ground that no vacancy existed in the office. Two opinions were filed in this case, and in one it is said: "It has been contended that, inasmuch as the term of office of tobacco inspectors commences on the first Monday in March and is to continue two years, a vacancy occurs immediately upon the expiration of the term of two years; and such would be the case were it not for the further provision of the thirteenth section by which all officers are to continue *in office until their successors respectively qualify according to law.* It is true that the Governor may appoint, by and with the advice and consent of the Senate, at a regular session of the legislature, a successor to an incumbent in office, and the successor, so appointed, would be entitled to take possession, and enter upon the discharge of the duties of the office, immediately upon the expiration of the term of two years of his predecessor, and in such case there would be no vacancy. But if no appointment be made by the Governor and Senate, the thirteenth section still guards against a vacancy, by providing

that the incumbent shall remain *in office* until his successor shall qualify according to law, which can not be until one shall have been appointed in accordance with the requirements of the thirteenth section; that is, by the appointment of the Governor, by and with the advice and consent of the Senate. If a successor be not so appointed, the incumbent will continue in office, not as a mere *de facto* officer, but as an officer *de jure* by the express language of the thirteenth section." That the language referred to in the Maryland Constitution was designed to limit the appointing power of the Governor alone, and to prevent such a vacancy as the Governor, without the consent of the Senate, could fill, the opinion proceeds to demonstrate beyond a doubt. It says: "In the convention of 1851, while a section from which section thirteen of the present Constitution seems to have been copied, was the subject of discussion, the chairman of the committee on the executive department stated that the provision of that section, by which incumbents were to *continue in office* until their successors should be qualified according to law, was inserted for the purpose of preventing detriment to the public interests from interregnums, whether arising from the refractory temper of the Governor, or the Senate, or both. 1 vol. Debates, 468. The convention which framed the present Constitution seems to have been unwilling to confer the power of appointment to office upon the Governor alone, excepting cases of absolute necessity, by conferring such power to fill vacancies. The language referred to, it is here held, was used for the express purpose of preventing such a vacancy in the office as the Governor could fill. The opinion further states that "the effect of the words following the express limitation of the term of an office, as in

this case, 'and until his successor shall be appointed and qualified,' or 'and until his successor shall qualify,' has been the subject of frequent judicial determinations of courts of high authority, and the construction of those terms has become fixed and settled. They are held to mean, according to their plain import, an extension of the definite term of office, and that no vacancy exists in the office while an incumbent, lawfully appointed, holds by virtue of such extension of his term; and of course no vacancy existing, no appointment can be made merely to fill a vacancy." "The very *object of employing such language,* in the limitation of the term of office is to prevent a vacancy occurring before a successor is duly appointed and qualified, as may be provided." There can not be any mistaking the decision just referred to, on the point of who is the successor mentioned in the Constitution. In the language of the court: "The successor here meant is not the appointee of the Governor alone, who is only authorized to appoint in case of a vacancy actually existing, but the appointee of the Governor, by and with the advice and consent of the Senate."

By the Maryland Constitution of 1851, it was provided that the Adjutant-General shall be appointed by the Governor, by and with the advice and consent of the Senate, and that all civil and military officers then holding commissions should continue to hold and exercise their offices according to the then tenure until they should be superseded according to the provisions of that Constitution, and until their successors be duly qualified. The power of filling vacancies was lodged in the Governor. The Governor nominated a person to be Adjutant-General and the Senate did not confirm him. The Governor then made an appoint-

ment to fill what he conceived to be a vacancy in the office, but it was held that the appointment was im-properly made, and that the incumbent held over until joint action of Governor and Senate. Watkins vs. Watkins, 2 Md., 341.

In the case of State *ex rel.* vs. Howe, 25 Ohio St., 588, a question arose as to the power of the Governor to make an appointment during the recess of the Senate, on the expiration of the term of an office required to be filled by appointment by the Governor and Senate. The statute provided that the officers in question "shall be appointed by the Governor, by and with the advice of the Senate, one of their number being desig-nated by the appointing power aforesaid, acting com-missioner, and all of them to hold their offices for three years from the day of their appointment, and until their successors are appointed and qualified, unless vacan-cies occur from death, resignation or removal for cause as herein provided." The Constitution of that state also provided that appointments of the character in question should be made by the Governor and Senate, and that the Governor could fill vacancies in vacation. At the expiration of a regular three-year term—the legislature not being in session—the Governor conclud-ed that a vacancy was thereby created in the office, and assumed to appoint another person than the in-cumbent to fill the supposed vacancy. This appoint-ment of the Governor was held to be void and of no effect by the court. The opinion says: "It is mani-festly the design of the Constitution, as well as the statute, to secure to such office an incumbent who pos-sesses the confidence and approval not only of the Gov-ernor, but also of the Senate of the state. The only exception provided for is one of necessity, to-wit: an appointee to fill a vacancy, when the advice and con-

sent of the Senate is not attainable. The only question in the case, therefore, is, was there a vacancy in the office of acting commissioner at the time Harper's appointment was made? If not, his appointment was unauthorized, and the defendant is lawfully entitled to hold the office. It is hardly necessary to deny, as no one contends, that a vacancy is created in the office by the mere appointment of a successor to the defendant. And it is almost as palpable, that if a successor had not been appointed, the defendant would have continued to hold, not merely as a *de facto* officer, but as an officer *de jure*. This must be so, if effect be given to the provision of the statute authorizing him to hold over his three years, until a successor shall be appointed and qualified. The successor here meant can not be the appointee of the Governor alone, who comes into the office temporarily to fill a vacancy, but the appointee of the Governor, by and with the advice of the Senate. Were it otherwise, it would be necessary to hold that a vacancy was created by an appointment to fill the vacancy, or that, in contemplation of law, an office is to be regarded as vacant while in the possession of an officer, who is rightfully and lawfully entitled to hold it. Much stress is laid by the relator on the significance of the word 'term,' a word not used in the statute, however; and the claim is that the office became vacant on the 16th of April, 1875, by reason of the expiration of the defendant's term of office. Let it be conceded that the defendant's term was limited to three years, from April 16th, 1872, it is nevertheless true that the same statute which imposed the limitation also provided that the right of the defendant to hold the office should *continue thereafter until his successor was appointed and qualified. Qui haeret in litera,*

*haeret in cortice.* The plain and obvious import of the language of the statute is, that a vacancy shall not occur at the end of three years from the incumbent's appointment. It is true, a successor may be appointed by the Governor, by and with the advice and consent of the Senate, either before or after the expiration of the three years; and, when so appointed and qualified, the right of the incumbent to hold the office ceases whenever the three years from the date of his own appointment have elapsed. In such case, there is no interregnum or vacancy in the office. It passes in succession. The end of one tenure and the beginning of the next, occur at the same instant. But if no successor be qualified, the old incumbent continues in office, not as a mere *de facto* officer, or *locum tenens*, but as its rightful and lawful possessor until such successor be duly appointed and qualified."

The case of State vs. Lusk, 18 Mo., 333, involved an executive appointment to the office of public printer. The statute creating this office provides that the public printer should be elected at each session of the general assembly by joint vote of the two houses, and that he should hold his office for two years, and until his successor shall be elected and qualified. Provision was also made that if the public printer should die, or resign, or if from any other cause the office should become vacant, the Governor could appoint a public printer, who took the place of the one vacating the office. A public printer was duly elected and qualified, and the general assembly failed to elect his successor. The Governor of the state considered that a vacancy existed in the office after the adjournment of the legislature, and made an appointment. It was held he could not do so. It was stated that the only

question in the case was whether the office of public
printer became vacant by reason of a failure to elect a
public printer. Quoting from the opinion: "It is in-
sisted for the state, that the term for which the office
is to be held is two years, and that the additional time
until a successor is elected and qualified is added,
merely to prevent the office being without some per-
son qualified to discharge its duties, and does not
prevent its being considered vacant for the purpose of
its being filled by executive appointment. There are
many cases, both in the Constitution and laws, in
which the same words are used in prescribing the ten-
ure of offices." Several cases are then mentioned.
"While it may be true, that the design of continuing
an incumbent in office, until his successor is duly
elected and qualified, is to prevent any interregnum
in the office, and to have some person always author-
ized to discharge its duties, it is also true, that the in-
cumbent, until the qualification of his successor, is as
fully in the office, and entitled to all of its advantages
and emoluments, as he was for the previous period of
his service, and it is his right to hold the office until
everything has been done which is required by law to
give title to the office to another person. * * *
It can not be doubted that Lusk was entitled to dis-
charge the duties of the office, not only until the first
day of May, 1853, but that he would now be in office,
competent to discharge its duties and entitled to its
emoluments, if no appointment had been made by the
Governor, and such would be the effect of the words
prescribing the tenure, until his successor shall be
elected and qualified.

But it is unnecessary for me to consume time and
space in quoting from decisions in harmony with the

views announced in the cases to which reference has been made. It is unquestionably true according to the overwhelming weight of authority in this country that where by a Constitution or an act of the legislature public officers are elected or selected for specified terms, and they are by the same authority authorized to hold their offices, or continue in their offices, until their successors are elected and qualified, or until their successors are duly qualified, no vacancies are created in said offices by failure of the electing agency to select successors in the regular mode, that the appointing power alone can fill. As stated in the opinion in the case of State *ex rel.* vs. Harrison, 113 Ind., 434, "the policy of provisions of that nature is to prevent the happening of vacancies in office, except by death, resignation, removal and the like. They rest upon the assumption that the wiser and more prudent course is, in case the electoral body fails to discharge its functions, to authorize the incumbent to hold over until the succeeding election, rather than that a vacancy should occur, to be filled by the appointing power." The cases cited by counsel for relator from the California decisions are clear and positive on this point. It is true that there were some conflicts in the earlier decisions in that state on such cases, but the doctrine was finally put to rest, and the result is as above stated. People vs. Reed, 6 Cal., 288, has been overruled. These decisions are referred to by Mechem on Public Officers, sec. 128, and he says: "Like rulings have also been made in other states, and such seems to be the settled principle of the law." The case of State *ex rel.* vs. Cocke, 54 Texas, 482, referred to by counsel for respondent, may be conceded to be the other way, but it stands almost alone so far as I can find. People vs. Whitman, 10 Cal., 38; Peo-

JUNE TERM, 1893. 195

State ex rel, v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

ple vs. Tilton, 37 Cal., 614; People vs. Bissell, 49 Cal., 407; Stewart vs. State, 4 Ind., 396; Stocking vs. State, 7 Ind., 326; State *ex rel.* vs. Harrison, 113 Ind., 434; People vs. McIver, 68 N. C., 467; State *ex rel.* vs. McClure, 84 N. C., 153; Tappan vs. Gray, *supra*; McCrary on Elections, section 314. In this connection reference may be made to the contention that a vacancy is created by section 214, Revised Statutes. This section is taken from the act passed in 1868, in reference to vacating offices. The only claim that can be made for a vacancy under this statute must rest upon the sixth subdivision, which is as follows: *viz·* "When any office created or continued by the Constitution or laws shall not have been filled by election or appointment under the Constitution or law creating or continuing such office." A careful reading of this provision in the connection in which it is found will impress one with the view that its real purpose was to provide for a case where the Constitution or laws created an office or continued one that had ceased to exist, and no selection had been made of an officer to discharge its duties, a vacancy was declared therein, and the Governor was authorized to appoint some person who could perform the duties thereof until a regular selection could be made. Under this view it would be a provision for filling an office originally that had been created or continued in existence. If the legislative purpose was to declare a vacancy in case a successor had not been selected to succeed an incumbent already regularly in office, it seems that direct language to accomplish this purpose would have been used. A legislative provision somewhat similar, in reference to appointing an officer, received such a construction as here indicated in the case of Stewart vs. State, 4 Ind., 396 The provision in our statute is,

that when the office created or continued "shall not *have been filled* by election or appointment under the Constitution or law creating or continuing the office." There can be no claim that the office in question here has not been filled. Incumbents regularly appointed have continued in the office and were in possession at the time the last appointments were made. But aside from this, if the Constitution has continued a regular incumbent in office until his successor is duly qualified, and this provision was intended to prevent a vacancy until such a contingency happened, it would be beyond the power of the Legislature to defeat this provision of the Constitution. The decisions cited show that the language construed by them was intended as a limitation upon the appointing power, and for the express purpose of preventing a vacancy. The settled rule is that the policy of such provisions is for this express purpose. If the language of our Constitution brings it within the rule of the decisions referred to, then there is an end of this contention, for no one, I presume, will contend that a legislative enactment can contravene the limitations of the Constitution. State *ex rel.* vs. Howe, *supra*; People *ex rel.* vs. Wilson, 72 N. C., 155; People *ex rel.* vs. Mott, 3 Cal., 502.

Let us now examine the language of the provisions of our Constitution. The two sections above quoted, taken together, may fairly be stated in presenting the point to be decided in this case as follows, *viz*: County commissioners shall be appointed by the Governor, by and with the consent of the Senate. Their terms of office shall be two years. They shall continue in office after the expiration of their official terms until their successors are duly qualified. The official term clearly has reference to the two years prescribed in

Section 5 of Article VIII, as this is the only mention made anywhere of the official tenure of such officers. If the official term mentioned in Section 14 of Article XVI refers to the two-year term already fixed—and there can be no doubt about this—then by the very terms of this section the incumbent is continued in *office* after the expiration of the two years until his successor is duly qualified. It can not successfully be maintained that the Constitution by the use of the words "after the expiration of their official terms," recognizes a vacancy in the office from that date, where no qualified successor appears, because by the unmistakable language the officer is continued in the office after that time. The words "continued in office" imply not the beginning of a new and different holding, but the prolongation of one already existing. To continue in office is to remain in it, for the word "continue" means "to remain in a given place or condition; to remain in connection with; to abide; to stay." Webster's Dic. Remember that the language is not simply to continue in the discharge of the duties of the office after the end of the official term, but to continue in office. If the officer continues in the office itself until his successor is duly qualified, how can a vacancy occur by the expiration of the term before the successor is duly qualified? Of course as soon as a properly qualified successor appears, the incumbent must give way, but until such successor does appear he is still *in the office*, and rightfully there by the very terms of the Constitution itself. The qualified successor can not be the Governor's appointee. The decisions are clear on this point. The Governor can not appoint a successor until the vacancy first happens, and this must precede the appointment. Were it otherwise, in the words of the Ohio court, "it would be necessary to hold that a

vacancy was created by an appointment to fill the vacancy, or that, in contemplation of law, an office is vacant while in the possession of an officer who is rightfully and lawfully entitled to hold it.". Instead of trimming down the language of the Constitution so as to provide for a vacancy it must be remembered that we should a'low it full scope in order to guard against a vacancy, as the law abhors a vacuum in public offices. If the point is doubtful, the scale should be turned against the appointing power where there is a party authorized to perform the duties of the office until it can be regularly filled. People vs. Tilton, 37 Cal., 614.

The distinction between the authority to perform the duties of an office after a vacancy has happened in it until the office has been filled in some legal way, and the authority to hold the office itself, or continue therein until a duly qualified successor appears, is clearly pointed out in the case of Johnson vs. Mann., 77 Va., 265. Here an incumbent city treasurer was claiming the office against one who had been duly elected in regular succession, but who had failed to qualify before the beginning of the next term. *The statute declared a vacancy in the office in such case.* The court held that the incumbent was entitled to hold the office, and that the newly elected officer, by reason of his failure to qualify within the time required by the statute, forfeited his rights to the office. But the incumbent claimed not only the right to get possession of the office, but to continue therein until the next regular election, and that it could not be filled by appointment that was lodged by statute in the judge of the hustings court of the city in case of vacancy. The incumbent relied upon a clause in the Constitution of that state which provided that

"the judges and all other officers elected or appointed, shall continue to discharge the duties of their offices after their time of service have expired, until their successors have qualified." In construing this clause the court draws the distinction between it and the provisions construed in the cases of Commonwealth vs. Hanley, and State vs. Lusk, *supra*. The clause in the Virginia Constitution, in the language of its court, "simply provides for the holding over by the incumbent after the expiration of his term, until his successor shall qualify. The plain unequivocal import of this section of the Constitution is, that when the regular term expires, the office becomes, in the eye of the Constitution, vacant, but with authority to the incumbent, already qualified, to continue by virtue of such previous qualification, made effective for the purpose by the Constitution, to discharge the functions of the office until he is succeeded in the way preferred by the people, as pointed out in the Constitution made by them, and in the laws made in pursuance of that instrument." In referring to the following language of the court in Commonwealth vs. Hanley, *viz:* "It will be observed that the terms on which alone the Governor can appoint, are a *vacancy in the office*, and that there can be a vacancy in an office when there is a person in possession, whom all acknowledge to be rightfully in possession, having a perfect right to exercise all the powers and duties of the office, and to receive and enjoy all its emoluments, is a position difficult to comprehend. It is an abuse of terms to say that at the time the Governor issued his commission to the relator the office was vacant, for no person can plausibly deny that the respondent was the rightful possessor of the office, at that time," the Virginia court says: "strong as this lan-

200 SUPREME COURT.

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

guage is to show that no vacancy exists where there is a person rightfully in possession, and entitled *to hold on* until his successor is *duly qualified* (for such is, or was, the language in part of the Pennsylvania Constitution), it in no particular meets the demands of the petitioner's case under the Constitution and law of Virginia as will be * shown." Again in reference to the case of State vs. Lusk, it is said: "In all essential particulars it is the Pennsylvania case of the Commonwealth vs. Hanley over again. It is plain that, like the latter, the peculiar language under construction controlled, and even forced the decision as made. It was idle to say that the office of public printer was vacant, because the statute creating the office in the most explicit terms expressly invests the incumbent with title and right to hold, not for two years only, but for two years and *until his successor shall be elected and qualified.* The appointment of the Governor was invalid, because there was no vacancy. That there was no vacancy, comes from the fact that the plain language of the statute extended the official term of the incumbent until his successor should be *elected* and qualified."

Read the Florida Constitution in the light of all the surroundings, and guided by the correct rules of construction in such cases, and there can be no reasonable doubt about its landing us within the rule laid down by the Pennsylvania and California decisions which are sustained by the decided weight of athority in this country. By the Florida Constitution the incumbent is entitled to hold the office, or hold on in the office, for the language is that he shall "continue in office," and not only is he entitled to continue in office, but the time which he can hold is fixed. He is to hold not only the two years prescribed as the ordinary term,

but after his term is ended until a successor is duly qualified. It is difficult to see how language can make it plainer. But there are other considerations in ascertaining the meaning of the Constitution that should not be overlooked. The probable results of the workings of the government under any constitution must have been contemplated by the framers thereof. It certainly could not have escaped the attention of the framers of our Constitution that the Governor and Senate might in some instances fail to agree on appointments. The courts do not in construing constitutions and statutes impute improper conduct to public officials, and we have no right to assume that any Governor or Senate will refuse to perform a duty. But still judges should not close their eyes to the probable results of the operation of a law in seeking after the meaning of the law-makers. If we hold that the Governor has the power to make appointments in cases requiring joint action of himself and Senate upon the expiration of terms during the recess of that body, notwithstanding the hold-over provision in the Constitution, then he has it in his power to force his nominees into office although the Senate may have deliberately rejected them, and in the face of the provision that they shall be jointly made. On the other hand, it may be said that if the Governor can not appoint upon the expiration of a term during the recess of the Senate, then that body has it in its power to continue incumbents in office although they may be objectionable and unworthy. In answer to this objection the courts have said that it was the design of the Constitution to secure for the public service persons possessing the confidence of both the Governor and the Senate; where an agreement can not be had on a successor, the then in-

cumbent who has received the approval of both the Governor and Senate shall hold over until a successor is selected who does possess such confidence. He has had the experience of a term at least, and is presumed to be familiar with the duties of the office. The large power given the executive to suspend for cause shows that the convention designedly made ample provision to guard against unfaithful officers, and the clause we are now construing should be considered in connection with this fact. But still further, the few constitutional offices appointed by the Governor and the Senate, such as State attorneys, circuit and criminal court judges, and county commissioners, have official terms of years prescribed, but the Constitution does not fix the beginning of these terms further than to require the appointments to be made with the consent of the Senate, and the regulation in reference to unexpired terms of judges. In the case before us the record shows that the official terms of the office of county commissioners for Duval county expired during the recess of the Senate, and very soon after the adjournment of the last Legislature. The Governor in this case submitted his nominations of successors to these officers to the Senate for their approval, and in this I think he did right. But the Constitution is silent as to when the Governor shall submit nominations to the Senate. Suppose an executive should conclude that it was not his duty to submit to the Senate nominations for offices in which vacancies had not occurred, and would not happen until after the adjournment of the Legislature, it is certain that there is no power to make him do so. And so far it has not been determined here that it would even be his duty to do so. In consequence of the failure of the Constitution to fix a date for the commencement of the appointive offices,

we find the terms of circuit judges and county com-
missioners expiring during the recess of the Senate,
and this result, as we can readily see, could have been
brought about by submitting nominations to the
Senate during the last days or hours of the
session of that body, or by its holding nomina-
tions under consideration until the last mo-
ment. Without implying blame on the part of
either the executive or the Senate, the result as we
now see it in this State, could have been brought about
in the way indicated. Let the view obtain that the ex-
ecutive is not required to submit nominations for suc-
cessors in office until vacancies have happened by the
expiration of terms, and the joint action of the Senate
in making appointments is virtually destroyed, in face
of the plain provision that appointments shall be made
with its consent. But even if this view does not prevail,
and it is held that the Governor can appoint after the
expiration of a term, then we can disregard the action
of the Senate in rejecting nominations and put the
same persons in office after adjournment. In the case
of county commissioners the official term is two years,
and the *ad interim* appointments to this office will
consume the entire period prescribed for it in conse-
quence of the biennial sessions of the Legislature.
These appointive officers are of the highest importance
in the administration of the government. County
commissioners not only levy the taxes and control
county finances, but, at the time of the adoption of the
Constitution, appointed the judges and inspectors of
elections, granted licenses to retail liquor, laid out
public roads and exercised many powers of vital im-
portance to the people. Is it reasonable to suppose
that the framers of our Constitution, acting under the
avowed purpose of taking away executive patronage

and limiting the appointive power, would have deliberately left the Constitution in such a condition? And if they have employed language that naturally and according to its plain meaning tends to a different result, and in harmony with the clearly expressed purpose that such officers shall be appointed by the Governor, with the consent of the Senate, should not the court put such a construction upon this language? I think there is but one answer to this question. To construe it otherwise would be to do violence to the language of the instrument itself, and to disregard the rules of construction in ascertaining the meaning of the law-makers. The construction I contend for will harmonize the entire Constitution, and by it senatorial consent will be required in the appointment of all officers whenever the terms expire, and this beyond all question in accord with the spirit of the instrument.

It is insisted by counsel who argue for respondent here that the advisory opinion given to the executive in 1889 (25 Fla., 427, 5 South. Rep., 613) is in favor of the view that a vacancy existed in the offices of county commissioners of Duval county when the Governor made his appointments in June last. The advisory opinion referred to sustains the view that when the term of an elective county office to which a person had been elected for the entire term, has commenced, and there is a vacancy in the office on account of the failure of the person elected to give bond and qualify as required by Section 7 of Article VIII of the Constitution, the Governor may fill the vacancy by appointment, and such appointee holds only until the qualification of a successor chosen at the next ensuing general election to be held in accordance with Section 9 of Article XVIII. The clause in Section 7 of Article VIII

reads as follows, *viz*: "If any person elected or ap-
pointed to any county office shall fail to give bond and
qualify within sixty days after his election, the said
office shall become vacant." Here is plainly a declar-
ation of a vacancy in a county office by the Constitu-
tion itself, but in what cases does the vacancy exist?
When a person who has been regularly elected or ap-
pointed to take the place of one already in office, and
the person so selected to supercede the incumbent
fails to qualify and carry out the mandate of the elec-
toral body, then the office is declared vacant and the
Governor can fill it as provided by law. But there is
no authority according to any rule of construction for
holding that the clause in question declares a vacancy
in cases where the electoral body has failed to select a
successor and there is no one authorized to give the
bond or otherwise qualify for the duties of the office.
The vacancy is declared to exist because the duly
elected person fails to qualify, and in no other case is
a vacancy declared. No possible construction can
push the language of this section beyond the case ac-
tually provided for in it. But if the framers of the
Constitution were so particular to prescribe a vacancy
in the one case mentioned, upon the failure of a prop-
erly elected or appointed successor to qualify within
sixty days from his election, how can it be contended
that they have thereby designed a vacancy to exist in
other cases. Does not the provision for the vacancy
in one case exclude the idea of a vacancy in any others?
It is clear, I think, that the last clause in Section 7 of
Article VIII does not afford any authority for the po-
sition that the offices of county commissioners of Du-
val county became vacant upon the expiration of the
official terms of the present incumbents, and a failure
of the Senate to concur with the Governor in the selec-

tion of successors, and it is impossible for construction to give it such weight.

It is further contended that the executive department of the government has so construed the Constitution as that a vacancy is deemed to exist upon the expiration of a term of office, and that the court should follow this construction in this case. In support of this contention counsel who argue here for respondent furnish us a list of appointments of two State attorneys, or rather one person appointed twice to this office, and eight county judges, under the Constitution of 1868, and of four appointments of county commissioners, under the present Constitution, all made in the year 1891. The provision in reference to the above mentioned offices in the old Constitution was, that they should hold office for four years from the date of commissions, and until their successors shall be appointed and qualified, or for four years, or until their successors are appointed and qualified. With the exception of the cabinet officers who hold the same time as the Governor, or until their successors shall be qualified, these were the only officers under that Constitution that had such a tenure prescribed. The others had a fixed term of years with no other provision in reference to their tenure. It is not contended that the judiciary department has ever given its sanction to the appointments referred to in the list, but that the construction put upon the old Constitution by the Governor should control us in our interpretation of the new. There are certain well-recognized rules of construction of constitutions and laws that have always had weight with the judges in their interpretation of the same, such as that where a clause has received a definite construction, the subsequent adoption of the clause by the law-making department carries with the lan-

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

guage adopted also the construction put upon it, and also where the questions do not involve personal rights, but are purely political in their character and depend upon provisions of doubtful interpretation, the courts will give great weight to the construction adopted by the political department of the government, and where such construction has been acquiesced in for a long time it will be followed. But these rules of construction find no application to the provisions in our Constitution. Let us take the case of the State attorneys referred to under the provisions of the old Constitution, that they should hold their offices for four years and until their successors shall be appointed and qualified. With the exception of the Texas decision referred to there has not been a published case in the American courts that I can find that has not held in construing such language that the incumbent continues to hold the office after the end of the four years, and until his successor is appointed as provided by the Constitution. This construction has been so uniform that it is said in decisions and text-books to be settled and fixed. Can it be contended that the practice of a Governor in making a few appointments can alter the fixed and settled meaning of a Constitution as uniformly held by the judiciary? There can be nothing doubtful about such language. But the revised Constitution, under which the present case has arisen, makes a radical change in the system of selecting public officials. A new electoral agency has been established and the appointive power vastly curtailed. All State, county and municipal officers continue in office after the expiration of their terms prescribed for the office until their successors are duly qualified. This language was not used in the previous Constitution, and is made applicable to all officers under a new fea-

208    SUPREME COURT.

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

ture of official tenures provided for in the revised instrument. It should be construed in harmony with this system, and not to defeat it. If the same language that is applied to the tenure of office of State attorneys under the old instrument had been employed in reference to all officers under the new, there is in my mind no question as to how the court should construe it. We could not allow the few appointments of the Governor to control the settled construction of the Constitution. But the language used in the new Constitution has never been construed by any department except by the Governor in the year 1891 in making four appointments of county commissioners, so far as we are informed. It has not been the ordinary life-time of a law suit in this court since these appointments were made, and they can not of course control the court in construing this language according to its real meaning. I have no doubt but that the appointments referred to under both Constitutions were made with the purest motives, and in the full belief that the executive power was in each case rightfully exercised, but the court is now called upon to construe the Constitution, and this should be done according to the settled rules of construction and in the light of all the surrounding circumstances. In answer to this idea of executive construction I quote the language of the Ohio decision, *supra*, *viz*: "We are aware that the executive department of the State government has, on divers occasions since the adoption of the present Constitution, assumed to fill vacancies in office by appointment, when, according to the foregoing views, vacancies did not exist. And, on the other hand, the legislative department has adhered to a different construction of its constitutional powers, in providing against the oc-

State ex rel. v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

currence of vacancies in numerous offices, by author-
izing incumbents to hold over the fixed terms, until
successors should be chosen and qualified. This court
is now called upon, for the first time, to declare the
true limit of powers in this regard as between these
co-ordinate branches of the government. After a
careful examination of the question, in the light of
both principle and authority, we are led to the con-
clusion that the general assembly may provide against
the occurrence of vacancies by authorizing incumbents
to hold over their terms in cases where the duration
of their tenures is not *fixed and limited* by the Con-
stitution. By this solution, public trusts and offices
are preserved to the administration of those agents
who may be chosen in conformity to the general pol-
icy of the State, as declared by its Constitution and
laws providing for their election or appointment, and
at the same time, all the evils contemplated as likely
to result from vacancies in offices are guarded against
by confining the exercise of the power to fill vacancies
in office to those cases where no one is authorized by
law to discharge the public duties, which, we think,
is the constitutional scope of that power."

The case of State *ex rel.* vs. Kuhl, 51 N. J. (Law)
191, referred to by counsel for respondent, determined
that where a vacancy actually happened in an office
during the session of the Senate, and was not filled by
the joint action of that body and the Governor dur-
ing the session, the vacancy still existed after the
legislature adjourned. The Constitution of that state
provided that "where a vacancy happens during the
recess of the legislature in any office which is to be
filled by the Governor and Senate, or by the legislature
in joint meeting, the Governor shall fill such vacancy

and the commission shall expire at the end of the next session of the legislature, unless a successor shall be sooner appointed." An incumbent in office died during the session of the Senate, and that body rejected the Governor's appointee. The court held that the vacancy that happened during the session of the Senate existed in the meaning of the Constitution after that body adjourned without confirming a person to fill the office. There was no question about the office being vacant in this case as the incumbent died and there was no one claiming to hold it, and the only point was whether the Governor could fill the vacancy actually existing in consequence of its happening during the recess of the Senate. The point we are considering is whether or not any vacancy in fact existed in the office at the time the Governor appointed. It would be rather a procrustean construction to make the New Jersey case an authority for the disposition of the case before us. The articles in the schedule providing for the transition of the government from the old to the new system are not now in force, but the fifth section providing that vacancies occurring by limitation of terms before the general election in 1888—when the new elective system should begin—should be filled as provided for under the old Constitution, shows that a change in such appointments was contemplated under the new. We must of course look to the provisions in the new as controlling in such matters. Section 14 of this article refers to elective officers.

I think the Constitution of Florida continued in office the county commissioners of Duval county, holding at the adjournment of the Legislature, and that they will continue in office until their successors are appointed in the way provided by that instrument,

State ex rel, v. Murphy and Re Comrs. Duval Co.—Opinion of Court.

unless the offices become vacant by some recognized legal way; and that the appointments made by the Governor in June last are of no effect. This construction is in accord with the letter and spirit of the Constitution, and any other extends executive control over these public officers in a way and manner not authorized by that instrument.

The forgoing views were written without seeing the opinion of the majority of the court in this case and without reference to that opinion. Since my views were submitted some additions have been made to the opinion as prepared, seemingly in reply to my position in some respects. I regard the entire opinion of the court as vulnerable, but do not care to review it. There is an expressed design in the Constitution to retain in the hands of the Governor in connection with the Senate the appointing power in reference to certain important officers, but it was not the purpose of that instrument to establish executive disposition over these officers. The mere fact that these appointments are required to be made by the Governor with the consent of the Senate shows this, and a construction of the Constitution that tends to destroy the safeguards in this respect is in the wrong direction and against the letter and spirit of our organic law.